WIGGINTON, Judge.
Defendant has appealed a final judgment by which the trial court rescinded and held null and void a written contract in which plaintiff agreed to sell and defendant agreed to purchase a parcel of land in Clay County. The court based its judgment on a finding from-the evidence that the contract in question was the result of either a mutual or unilateral mistake of a material fact and that equity required its rescission.
The provision of the contract which gave rise to this cause of action is as follows, to wit:
“1. PURCHASE PRICE: The purchase price to be paid by the Buyer to the Seller shall be NINETY THOUSAND AND NO/100 DOLLARS ($90,-000.00) based on $409.00 per acre, provided that an accurate survey of the above capitoned [sic] property shall represent said property to contain not less than 220 acres. If said property is shown by the survey to contain less than 220 acres, the total purchase price shall be adjusted downward and if the prop *897 erty is shown by the survey to contain more than 220 acres, then the total purchase price shall be adjusted upward. In either case, the total purchase price shall be the result of $409.00 per acre multiplied by the number of acres shown in the survey.”
A survey of the land made after the contract was executed by the parties revealed that the parcel did not contain 220 acres as was supposed by the parties, but only approximately 123 acres. Upon discovering such discrepancy plaintiff offered to return to defendant the binder payment made by him and brought this action for rescission of the contract on the ground of a mutual mistake of a material fact.
When viewed in a light most favorable to the prevailing party, we find the following facts to be fairly established by the evidence. Plaintiff and her deceased husband acquired the land in question by separate conveyances in the years 1935, 1938, and 1948. The aggregate amount of land described in the three deeds comprised in gross a total of 220 acres. Although the land was never surveyed nor its exact amount of acreage accurately computed, plaintiff and her husband for the past twenty years paid ad valorem taxes on the land pursuant to tax assessments based upon 220 acres of land. The property had extensive frontage on Black Creek and was improved with a one-story frame dwelling, other frame buildings, swimming pool, patios, barbecue pit, and was used as the summer home of the plaintiff and her husband.
In all the negotiations leading up to the execution of the contract of sale, it was clearly understood by the parties that plaintiff required a cash consideration to her of not less than $80,000.00. Because of the necessity of paying a real estate broker’s commission, and to meet another offer to purchase made by a third party during the period of negotiations, the purchase price finally agreed upon by the parties was raised to the sum of $90,000.-00.
The terms of sale were mutually agreed upon and defendant’s real estate broker caused to be prepared the contract of purchase and sale which is the subject of this litigation. It appears to have been the judgment of the lawyers who drafted the contract that it contain for defendant’s protection the provision for an adjustment of the purchase price on a per acre basis in the event a survey should show the parcel to contain less than the 220 acres assumed by the parties to comprise the parcel as a whole. This decision was implemented without the knowledge of or direction from either of the parties to the contract. The sum of $409.00 per acre as the adjusted rate to be added to or deducted from the purchase price because of any deficiency or overage in acreage found to exist was arrived at by dividing the total of 220 acres into the purchase price of $90,000.00. From the nature of the property and the use to which it was most suitably adapted, it is reasonable to infer that the exact amount of acreage contained in the parcel was of little importance insofar as the desirability of the property for the use to which it would be put was concerned. Plaintiff understood from the broker that the provision inserted in the contract for an adjustment to be made of the purchase price for any overage or deficiency in the amount of acreage being conveyed was to take care of any slight and relative immaterial variance which would probably be found to exist after an accurate survey of the parcel was made. In view of the fact that a portion of the land was waterfront property containing the improvements to be conveyed, partly swampland and partly unimproved woodland, the per acre adjusted price recited in the contract was wholly unrealistic and bore no relationship to the true value of the several categories of property involved in the transaction.
*898 In the case of Langley v. Irons Land & Development Co.[1] the Supreme Court laid down the following rules applicable to the facts in the case sub judice, to wit:
“ ‘Mistake by One Party Ground for Rescission, Not for Reformation.— Where a contract in writing is executed by only one of the parties, under a mistake as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written and to place the parties in status quo, but it does not constitute a ground for reformation, the reason being that by the mistake of one of the parties, there was no mutual assent to all the terms of the contract—no meeting of the minds—and hence there is no prior contract to which the writing may be made to conform. * * *
iff % ;}i ‡ i|C
“ ‘The jurisdiction of equity to decree the cancellation of an instrument because at the time of its execution the parties, or even one of them, labored under a mistake of fact, is well recognized; and the rule is the same whether the instrument relates to an executory agreement, or one that has been executed. Thus, in case of a material mistake by one or both of the parties to a deed as to identity, situation, boundaries, title, amount, or value of land conveyed, equity will cancel the deed, whether or not there is actual fraud; but a mere mistake as to the number of acres of land purchased, where the purchaser obtains the substance of what he expected, will not justify a rescission of the contract. * * * ’ ”
In determining whether or not a contract for the sale of real estate is one in gross or by the acre, the court must weigh all the circumstances which may serve as an indication as to whether or not it was the intention of the parties to make quantity the essence of the contract.[2] A contract of sale by the acre has been defined as one wherein a specified quantity is material and of the essence. Under such a contract the purchaser does not take the risk of any deficiency and the vendor does not take the risk of any excess. A contract of sale by the tract or in gross, on the other hand, has been defined as one in which the existence of the exact quantity specified is not material nor of the essence, each party taking the risk of the actual quantity to vary to some extent from what he expects it to be.[3]
In Perkins v. Simmons[4] the Supreme Court quoted with approval the rule stated by Black on Rescission and Cancellation as follows:
“ ‘Where a tract of land has been sold in gross for a specific price,—that is, not a price of so much per acre or per square foot,—and it appears that there has been a material mistake as to the quantity, the land conveyed being substantially more or less than the quantity contracted for or named in the deed, the mistake being innocent and shared by both parties, a court of equity will give relief by rescinding the contract provided there is no remedy at law adequate to the particular case. * * ’ ”
The trial court found it to be the intent of the parties that the sale would be one in gross for a lump sum purchase price yielding not less than $80,000.00 net to the seller and the per acre price stipulated in the contract was for the sole purpose of adjusting the purchase price either upward or downward in accordance with any slight or minor variations which might be found to exist in the actual acreage of the parcel as reflected by the survey to *899 be made before closing. There is nothing in the evidence to indicate that the parties ever negotiated or agreed upon a purchase price to be computed on a per acre basis. The evidence reasonably supports the trial court’s finding, and its conclusion that a mutual mistake of fact occurred which required rescission of the contract conforms to established principles of law.
If, as contended by appellant, the agreed purchase price of $90,000.00 is reduced by the deficiency of 97 acres disclosed by the survey at the rate of $409.00 an acre, the consideration which appellant would be required to pay under the contract would amount to only $50,000.00. This figure is approximately one-half of the net amount which appellee demanded throughout the negotiations as consideration for the sale. A requirement that appellee convey the land to appellant for such an adjusted purchase price would not only be inequitable insofar as concerns the rights of appellee, but would result in an unjust enrichment of appellant. This is so because included within the 123 acres actually owned by ap-pellee as disclosed by the survey is the valuable portion of the parcel on which all improvements are located and which comprises the high bluff waterfront property bordering Black Creek. The 97 acre deficiency which both parties thought was contained in the parcel but now shown by the survey to be nonexistent would necessarily be swamp and unimproved woodland of a value appreciably less than the per acre average of $409.00. Equity in good conscience can hardly justify a resolution of this dispute on any such basis.
We have carefully considered the remaining points urged by appellant for reversal, but find them to be without substantial merit. The judgment appealed is accordingly affirmed.
RAWLS, Acting C. J., and SPECTOR, J., concur.

. Langley v. Irons Land & Development Co., (1927) 94 Fla. 1010, 114 So. 769, 771.

. 1 A.L.R.2d 130.

. 1 A.L.R.2d 18.

. Perkins v. Simmons, (1943) 153 Fla. 595, 15 So.2d 289, 290.