427 So.2d 170 (1983)
FLORIDA LAND COMPANY, Petitioner,
v.
CITY OF WINTER SPRINGS, Respondent.
No. 62093.
Supreme Court of Florida.
January 27, 1983.
*171 Robert F. Higgins and Shawn G. Rader of Lowndes, Drosdick, Doster & Kantor, P.A., Orlando, for petitioner.
Michael D. Jones of Jones & Morrison, P.A., Altamonte Springs, for respondent.
EHRLICH, Justice.
This cause is before the Court on petition for review of a district court of appeal decision on the ground of express and direct conflict. The case at bar is reported at 413 So.2d 84 (Fla. 5th DCA 1982) and is in conflict with Andover Development Corp. v. City of New Smyrna Beach, 328 So.2d 231 (Fla. 1st DCA) cert. denied, 341 So.2d 290 (Fla. 1976). We have jurisdiction.[1] At issue is whether a city ordinance effecting a change in zoning for a specific parcel of land can be subject to a referendum vote of the electorate. We hold that it can and we approve the decision of the district court and disapprove Andover to the extent of conflict with the instant opinion.
Florida Land Company (Florida Land) purchased real property located within the City of Winter Springs (the City).[2] At the time of purchase the property was zoned R-U (rural urban development). Florida Land then filed an application with the City to have it rezoned to a classification of R-1A (single family dwelling). Upon receipt of the application, the Planning and Zoning Board studied the measure and held a public hearing on the request for the zoning change. The Planning and Zoning Board recommended to the city council that the zoning change be made in accordance with Florida Land's request. The city council also held a public hearing following the guidelines set forth in chapter 163, Florida Statutes (1981).[3]
*172 After the hearing the council adopted Ordinance No. 210 which rezoned Florida Land's property to R-1A and R-1AA (minimum lot and house size) and amended the City's official zoning map and comprehensive land use map which are incorporated in the comprehensive plan.
Thereafter a committee of citizens was formed for the purpose of commencing referendum proceedings under article X, section 10.01(b), Code of Winter Springs. The purpose of the referendum was to require the city council to reconsider the adoption of Ordinance No. 210, and if the council declined to repeal it, to require its submission to a vote of the electorate.
The city council declined to repeal the ordinance, thereby setting in motion the referendum process. Florida Land brought suit to enjoin the referendum. The trial court granted a summary judgment in favor of Florida Land declaring that the referendum procedure as applied in this case was an unconstitutional denial of Florida Land's due process rights and an improper delegation of the City's authority. The court enjoined the City and reinstated the ordinance. The Fifth District Court of Appeal reversed the holding of the trial court, whereupon Florida Land instituted this appeal.
Petitioner challenges that decision on several grounds but only two merit discussion. The first is that to submit this ordinance to a referendum vote of the citizens violates the petitioner's due process rights guaranteed by the state and federal constitutions. Specifically, it argues it has been deprived of its right to proper notice and its right to be heard.
We disagree. The citizens of the State of Florida in drafting and adopting the 1968 Constitution reserved certain powers to themselves, choosing to deal directly with some governmental measures. The referendum, then, is the essence of a reserved power. City of Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). A reading of article I, section 1 along with the words of article VI, section 5 of our state constitution, makes this abundantly clear:
ARTICLE I. SECTION 1. Political power.  All political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people.
ARTICLE VI. SECTION 5. General and special elections.  ... Special elections and referenda shall be held as provided by law.
This referendum provision was not provided for in such a general fashion in the Constitution of 1885. Referendum provisions in that constitution dealt with certain specific sections.[4] The concept of referendum is thought by many to be a keystone of self-government, and its increasing use is indicative of a desire on the part of the electorate to exercise greater control over the laws which directly affect them.[5]
Once the referendum power is reserved, particularly as done in our current constitution, this power can be exercised wherever the people through their legislative bodies *173 decide that it should be used.[6] In the case at bar, the citizens so decided. The charter of Winter Springs provides for this direct control over ordinances. Though the charter empowers the city council to pass ordinances, it also provides that the qualified voters have the power to require the council to reconsider an ordinance that it passes. If the council refuses to repeal it, it is submitted to a vote of the electorate. If a majority of the voters approve it, it becomes an ordinance. If a majority disapprove it, the law reverts back to what it was before the ordinance was passed.
Since this is one of the reserved powers, certain discernible due process standards accompanying delegated powers do not apply in this instance. City of Eastlake. Petitioner, nevertheless, argues that it has been deprived of proper notice and the right to be heard on the subject. However, prior to the time the proposal was submitted to referendum the zoning change was twice the subject of a public hearing pursuant to the statutory procedure under chapter 163, at which the petitioner had the right to speak. Furthermore, Florida Land had actual or constructive knowledge when it bought this property that it was zoned for rural use. We agree with the reasoning of the California Supreme Court in Dwyer v. City Council of Berkeley, 200 Cal. 505, 516, 253 P. 932, 936 (1927) wherein that court said:
Complaint is made that, if the referendum be applied to the proposed amendatory zoning ordinance, the persons most directly affected thereby shall have lost the opportunity to present their arguments for and against the proposed measure to the electorate in the manner provided by the ordinance. The answer to this contention is that all persons interested in the measure had to the moment of its adoption an opportunity to appear and oppose or advocate the passage of the proposed ordinance. So far as the adoption of the ordinance was concerned, no right was denied them. By the petition for a referendum the matter has been removed from the forum of the council to the forum of the electorate. The proponents and opponents are given all the privileges and rights to express themselves in an open election that a democracy or republican form of government can afford to its citizens upon any municipal or public affair. The ordinance procedure served its purpose, and, if there had been no referendum, the adoption of the ordinance would have been complete. It is clear that the constitutional right reserved by people to submit legislative questions to a direct vote cannot be abridged by any procedural requirements of a superseded municipal ordinance dealing with the same subject of legislation. (emphasis supplied).
The question whether a referendum procedure in a zoning matter affords due process in lawmaking was confronted by the United States Supreme Court in City of Eastlake. Eastlake had a comprehensive zoning plan codified in a municipal ordinance. The city charter required that any changes in land use agreed to by the city council be approved by 55% of the voters in a referendum. Respondent, an owner of realty, applied to the city planning commission for a zoning change. The city council approved the requested zoning change, but such was not approved by the requisite 55% margin. Respondent had, in the process, filed an action in the state court to declare the charter provision an unconstitutional delegation of legislative power to the people. The trial court and the Ohio Court of Appeals sustained the charter provision, but the Ohio Supreme Court reversed. The Ohio State Constitution specifically reserved the power of referendum to the people of each municipality within the state. The Ohio Supreme Court expressly found *174 that the city council's action in rezoning respondent's property was legislative in nature, but concluded that the referendum provision in the city charter constituted a delegation of power violative of federal constitutional guarantees. It so found because the voters were given no standards to guide their decision and the potential for arbitrariness in the process violated due process. The United States Supreme Court disagreed and reversed, saying
As a basic instrument of democratic government, the referendum process does not, in itself, violate the Due Process Clause of the Fourteenth Amendment when applied to a rezoning ordinance. Since the zoning decision in this case was properly reserved to the people of Eastlake under the Ohio Constitution, the Ohio Supreme Court erred in holding invalid, on federal constitutional grounds, the charter amendment permitting the voters to decide whether the zoned use of respondent's property could be altered.
426 U.S. at 679, 96 S.Ct. at 2364-65 (footnote omitted). We hold that the instant proceeding did not violate due process.
We now turn to the second argument raised by the petitioner. Zoning changes, Florida Land contends, are merely administrative matters and not the proper subject for referendum. Again, we disagree.
This action by the city council was a legislative function. We have previously addressed this issue in Schauer v. City of Miami Beach, 112 So.2d 838 (Fla. 1959), wherein we held that "[i]t is obvious to us that the enactment of the original zoning ordinance was a legislative function and we cannot reason that the amendment of it was of different character." 112 So.2d at 839. As we examine the entire procedural route taken by this zoning ordinance we cannot conclude that this was anything other than a legislative act. As such this type of ordinance may be subject to a referendum as provided in the charter. Petitioner may feel that this leaves it without a remedy. We remind petitioner that the referendum has not yet been held, and the result may be favorable to its cause. But should that go contrary to its desires it still has its remedy in court to challenge the ordinance if it feels it is arbitrary, capricious and unreasonable, bearing no substantial relation to the police power. Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).
The wisdom of this decision may be questioned in that all zoning changes made in this fashion are subject to the whims of a referendum and to the vicissitudes of the electorate. The other side of the coin is that this is a power that the people have reserved. If the people of Winter Springs choose to give up the power and pass it over solely to a zoning body, that they may do. But that they have not done, and this Court cannot and will not do it for them.
The decision of the district court is approved.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.
[2] The City of Winter Springs adopted a charter in 1972 (ch. 72-718, Laws of Fla.). Included in the charter was a provision for initiative and referendum. In 1977, pursuant to the County and Municipal Planning for Future Development Act, ch. 69-139, Laws of Fla., (ch. 163 (Part II), Fla. Stat. (1981)), the City adopted a comprehensive development plan, amending art. I of its charter to incorporate the statutory provisions, thereby subjecting the new zoning procedure to the charter machinery.
[3] All of these steps were taken in compliance with § 163.215(2), Fla. Stat. (1981) which reads as follows:

(2) The commission, regardless of the source of the proposed change, shall hold a public hearing or hearings thereon, with due public notice, but shall in any case, if any change is to be considered by the commission, submit in writing its recommendations on the proposed change to the governing body for official action. The governing body shall hold a public hearing thereon, with due public notice, if any change is to be considered and shall then act on the proposed change. If the recommendation of the commission is adverse to the proposed change, such change shall not become effective except by an affirmative vote of a majority of the entire membership of the governing body, after due public notice.
[4] For example, the referendum was a part of the amendatory process provided for in art. XVII, §§ 1-4; a part of the procedure to issue bonds, art. IX, § 6; essential to the consent to be taxed by local government, art. VIII; used for passage of special or local acts, art. III, § 21; and for local option laws, art. XIX.
[5] Initiative and referendum began to gain popularity throughout the states around the turn of the century. Since then, provision for its use has seen increased inclusion in state constitutions and local government charters. See Note, Constitutional Constraints on Initiative and Referendum, 32 Van.L.Rev. 1143 (1979); Note, Initiative and Referendum-Do They Encourage or Impair Better State Government?, 5 Fla.St.U.L.Rev. 925 (1977).
[6] In a critique of the 1885 Constitution and suggestions for revision, Professors Manning Dauer and William Havard saw no necessity for the general use of the referendum on a statewide basis, but only as a matter of local law. See Dauer and Havard, The Florida Constitution of 1885  A Critique, 8 U.Fla.L.Rev. 1 (1955). Nevertheless, a general provision was included in the 1968 Constitution.