448 So.2d 1170 (1984)
The IZAAK WALTON LEAGUE OF AMERICA, Appellant,
v.
MONROE COUNTY and Windley Key, Ltd., et al., Appellee.
No. 83-129.
District Court of Appeal of Florida, Third District.
April 17, 1984.
Sireci, Allen, Kelly & Muldoon and Mark Kelly, Key West, for appellant.
Lucien C. Proby, Jr., Key West, Roger A. Bridges, Coral Gables, for appellees.
*1171 Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
The Izaak Walton League of America, an environmental organization which is the present appellant, timely filed an appeal to the Monroe County Board of County Commissioners from a resolution of the Monroe County Zoning Board which rezoned property on Windley Key owned by the appellee, Windley Key, Ltd. The Monroe County Circuit Court, however, issued a writ of prohibition against the Commission precluding its consideration of the appeal on the grounds that (a) each member of the Commission had become disqualified because of prior public pronouncements, mostly at commission meetings, which were adverse to the rezoning of the property and (b) the League lacked standing to file the appeal under the pertinent provision of the Monroe County Code. We thoroughly disagree with the first reason but affirm the judgment under review on the basis of the second.

I
It is fundamental to our system that the members of a county commission or any governing body of a political subdivision who act in that capacity do not do so as judges  subject to judicial canons and standards  but rather, using the term in its Aristotelian sense, as politicians. Any supposed errors in the substance of their views or the manner in which their opinions are expressed are therefore ordinarily subject only to relief at the polls, not in the courts. See generally, Davis v. Keen, 140 Fla. 764, 192 So. 200 (1939); Osban v. Cooper, 63 Fla. 542, 58 So. 50 (1912); Broward County Rubbish Assn. v. Broward County, 112 So.2d 898 (Fla. 2d DCA 1959); Senior Citizens Protective League, Inc. v. McNayr, 132 So.2d 237 (Fla. 3d DCA 1961); 2 McQuillin, Municipal Corporations § 10.33 (3rd ed. 1979); 12 Fla.Jur.2d Counties and Municipal Corporations § 145 (1979). Indeed, when there is no specific legislation to the contrary,[1] the basic doctrine of the separation of governmental powers precludes judicial interference with the vote even of a commissioner with an identifiable personal interest in the particular issue. City of Miami Beach v. Schauer, 104 So.2d 129 (Fla. 3d DCA 1958), cert. discharged, 112 So.2d 838 (Fla. 1959); compare Fossey v. Dade County, 123 So.2d 755 (Fla. 3d DCA 1960) (disqualifying county commissioner under specific terms of county charter).
As an aspect of this rule, the law is clear that political officeholders may not be prevented from performing the duties they have been elected to discharge[2] merely because, as occurred in this instance,[3] they have previously expressed, publicly or otherwise, an opinion on the subject of their vote. This court has specifically so held in the virtually all-fours case of City of Opa Locka v. State ex rel. Tepper, 257 So.2d 100 (Fla. 3d DCA 1972). There, the Opa Locka City Commission had unanimously requested city manager Tepper's resignation at an open meeting. After the manager's motion to dismiss the charges was denied by a three-man commission majority, he sought and was granted prohibition against the three commissioners on the grounds of bias and prejudice. On appeal, we reversed on the ground that the trial court had erroneously determined that the three commissioners' predetermination to vote for the resolution removing the city manager either required or justified their recusal. Judge Hendry, writing for the court, stated that the resolution was a legislative act, and, citing City of Miami Beach v. Schauer, supra, concluded:

*1172 Whenever an act of the Legislature is challenged in court the inquiry is limited to the question of power, and does not extend to the matter of expediency, the motives of the legislators, or the reasons which were spread before them to induce the passage of the act.
257 So.2d at 104.[4]
Although Opa Locka would be alone sufficient to establish the incorrectness of the ruling below on this point, we think that the present situation even more obviously requires that holding. While Opa Locka involved what was at least arguably a quasi-judicial question, that of determining the validity of charges against a city employee, this case concerns the supremely legislative function of zoning, Florida Land Company v. City of Winter Springs, 427 So.2d 170, 174 (Fla. 1983).[5]
Accordingly, the cases have almost unanimously declined even to consider disqualification of a responsible official merely because he has expressed, or even committed, himself publicly on a zoning issue before a formal vote has taken place. This is true both when the acts complained of are committed prior to the time the official takes office, Furtney v. Simsbury Zoning Commission, 159 Conn. 585, 271 A.2d 319 (1970) (commissioner who, three years earlier, had expressed opinion supporting suitability of residential tract for shopping mall was not disqualified from hearing application to rezone property); Pearce v. Lorson, 393 S.W.2d 851 (Mo. App. 1965) (fact that member of board which had revoked permit authorizing commercial use of residence had, before taking office, drafted and signed petition for change in zoning law precluding such use held insufficient to constitute grounds of bias or prejudice); and when his preconceived notions are aired during a political campaign. Thus, in City of Farmers Branch v. Hawnco, Inc., 435 S.W.2d 288 (Tex.Civ.App. 1968), the court responded to the contention that the mayor and two councilmen who ran on a political platform opposing high density construction were disqualified from participating in the vote on an amendatory ordinance authorizing it by stating:
We do not agree. Campaign promises made in political races do not disqualify the successful candidates from exercising the duties of their offices after the election. To so hold would mean that very few successful candidates for political office would be able to qualify for their office or to perform their official duties. Under our theory of government the voters desire and even demand to be informed as to how candidates stand on the issues of the campaign... In any event public officials are not legally required to keep their campaign promises and whether they do or do not they are answerable to the voters at the next election, not to a particular private property owner.
435 S.W. at 292. Accord, Wollen v. Borough of Fort Lee, 27 N.J. 408, 142 A.2d 881 (1958) (councilmen who campaigned and were elected on promises to implement zoning changes qualified to vote on ordinance in manner consistent with prior positions).
The same rule applies when, as here, the official states his views on zoning questions or similar matters of community policy during his term of office. Binford v. *1173 Western Electric Co., 219 Ga. 404, 133 S.E.2d 361 (1963) (claim that commissioners passing upon application to rezone property had declared publicly that they favored such application in advance of proceedings held insufficient to void their action); Kramer v. Board of Adjustment, 45 N.J. 268, 212 A.2d 153 (1965) (no inference of bias or prejudice drawn from fact that member of board which granted variance for hotel construction had endorsed political candidates adopting positions favorable to hotel's developer); City of Fairfield v. Superior Court of Solano County, 14 Cal.3d 768, 122 Cal. Rptr. 543, 537 P.2d 375, 382 (1975) ("A councilman has not only a right but an obligation to discuss issues of vital concern with his constituents and to state his views on matters of public importance.") (disapproving Saks & Co. v. City of Beverly Hills, 107 Cal. App.2d 260, 237 P.2d 32 (1951)); compare and contrast Barbara Realty Co. v. Zoning Board of Review of Cranston, 85 R.I. 152, 128 A.2d 342 (1957).
Since there is no provision in the Monroe County Code,[6] the special act which governs Monroe County Zoning Board appeals[7] or the applicable Florida statute,[8] which requires or, indeed, permits[9] disqualification of a county commissioner on the predisposition ground, we conclude that the lower court erroneously usurped the legislative function in effecting that result.

II
The order granting the writ is affirmed, however, on the alternative basis relied on below: the lack of standing of the present appellant to pursue the appeal. Section 19-77(b) of the Monroe County Code provides:

*1174 Any person or persons claiming to be aggrieved on account of any ruling of the zoning board or board of adjustment which enforces this chapter may appeal in writing to the board of county commissioners. Any such appeal must be filed within thirty (30) days after the act or decision upon which any appeal is made and must specify the grounds thereof.
In Chabau v. Dade County, 385 So.2d 129 (Fla. 3d DCA 1980), another panel of this court squarely held that a representative association like the Izaak Walton League was not "aggrieved" by an adverse zoning decision under a Dade County ordinance indistinguishable from this one and thus could not maintain an appeal from the Dade County Zoning Appeals Board to the county commission.[10] We are unable to distinguish that decision on any principled basis. Since, under the present circumstances, we are bound to follow it, In re Rule 9.331, Determination of Causes by a District Court of Appeal, En Banc, 416 So.2d 1127 (Fla. 1982); see also, State v. Whitehead, 443 So.2d 196 (Fla. 3d DCA 1983) (Schwartz, C.J., specially concurring), the judgment below is affirmed solely on the authority of Chabau.
Because of the obvious significance of the issue, however, we certify to the Supreme Court of Florida that this decision passes upon the following question of great public importance:
Whether a representative group has standing as an "aggrieved" person or party to maintain an appeal of a zoning decision of a lower tribunal to the governing board of a county or municipality?[11]
Affirmed, question certified.
NOTES
[1] There is none involved here. See notes 6-8, infra, and accompanying text.
[2] It is significant  and wholly unacceptable  that under the ruling below, the citizens of Monroe County would be entirely deprived (putting the standing issue aside), of any review, as required in the code, by its elected County Commission of the Zoning Board decision in this important case.
[3] Under our holding, which assumes that the comments of the commissioners did indicate a predisposition against the appellee, their precise contents are irrelevant and are consequently not detailed in this opinion.
[4] In response to Tepper's argument that, under due process principles, he was nevertheless entitled to demand recusal of the three commissioners under Section 120.09, Fla. Stat. (currently Section 120.71, Fla. Stat. (1981) (Administrative Procedure Act), the court stated that the terms of that section are "particularly inapplicable to city commissions and should not be applied or construed to govern the legislative deliberations of city commissions." 257 So.2d at 104. Accord, e.g., Board of County Commissioners of Monroe County v. Marks, 429 So.2d 793, 794, n. 1 (Fla. 3d DCA 1983) ("The Administrative Procedure Act does not apply because Monroe County has not been defined as an `administrative agency' by general or special law or judicial decision.")

It is all the more obvious that the judicial recusal statute, Sec. 38.10, Fla. Stat. (1981), does not apply.
[5] In Winter Springs, the Supreme Court approved the submission of a zoning change to a popular vote. Just as a voter in Winter Springs could obviously not be deprived of his franchise because of a publicly expressed opinion before the election, so a Monroe County Commissioner charged under the Code with the same responsibility, may not be disqualified for that reason.
[6] Section 19-77(a), Monroe County Code (1979):

It shall be the duty of the board of county commissioners to hear and decide appeals where it is alleged there is error in any order, requirement, decision, determination or action of the zoning board or board of adjustment in the enforcement of this chapter.
[7] Chapter 61-2503, Laws of Florida § 8(2) (1961):

The Zoning Board shall have the authority and duty to consider and act upon application for District Boundary changes, after a public hearing as prescribed in Section 5. All decisions of the Zoning Board covering District Boundaries shall be by resolution concurred in by three (3) members of the Zoning Board, and shall become final after twenty-one (21) days from the date of said decision, unless appealed to the Board of County Commissioners. All appeals from decisions of the Zoning Board shall be filed with the County Zoning Director on forms prescribed by the County Commission, accompanied by a reasonable fee set by the County Commission, within twenty-one (21) days and not thereafter. An appeal from a decision of the Zoning Board may be taken by an applicant or his agent, or an aggrieved party whose name appears in the record of the Zoning Board. The Board of County Commissioners, after considering said appeal, shall by resolution either confirm, modify or reverse the decision of the Zoning Board.
[8] Section 286.012, Fla. Stat. (1981) provides:

No member of any state, county, or municipal governmental board, commission, or agency who is present at any meeting of any such body at which an official decision, ruling, or other official act is to be taken or adopted may abstain from voting in regard to any such decision, ruling, or act, and a vote shall be recorded or counted for each such member present, except when, with respect to any such member, there is, or appears to be, a possible conflict of interest under the provisions of s. 112.311, s. 112.313, or s. 112.3143. In such cases said member shall comply with the disclosure requirements of s. 112.3143.
As was noted by the Florida Commission on Ethics, "none of [the aforementioned sections] relate to bias or prejudice on the part of a public officer based on other than private economic interests or relationships." Op. Comm. Ethics, 79-14, March 22, 1979. Consequently,
[a] city council member may not abstain from voting on grounds of bias or prejudice against an individual when matters concerning that individual or the business he represents come before the council. It is present policy of this state that a public officer may vote upon any matter, so long as he files a memorandum of voting conflict. He also may abstain as provided by § 286.012, which has been interpreted by the attorney general to require that a voting officer have a personal financial interest in a matter in order to abstain. Therefore, in the absence of any applicable provision of law which would override policy established by § 112.3143, a public officer may abstain from voting only if there is or appears to be a conflict or interest under §§ 112.311, 112.313, or 112.3143... .
Ibid.
[9] Ibid.
[10] As in Chabau, none of the exceptions to the lack of standing rule of Renard v. Dade County, 261 So.2d 832 (Fla. 1972) apply since only the wisdom of the zoning board was challenged by the League. See Citizens Growth Management Coalition of West Palm Beach, Inc. v. City of West Palm Beach, 450 So.2d 204 (Fla. 1984); compare City of Miami v. Save Brickell Ave. Inc., 426 So.2d 1100 (Fla. 3d DCA 1983) and cases cited.
[11] In resolving this question as an original matter, the high court must decide whether, as we held in Chabau, the rules relating to court access, which deny standing, Citizens Growth Management Coalition of West Palm Beach, Inc. v. City of West Palm Beach, supra, apply; or whether, because of the judicial-legislative dichotomy which we have discussed supra, a broader range of interests may be heard by the commission, as indicated by the out-of-state cases we declined to follow in Chabau and reflected in the more relaxed standards now applicable in administrative proceedings. Douglaston Civic Ass'n, Inc. v. Galvin, 36 N.Y.2d 1, 364 N.Y.S.2d 830, 324 N.E.2d 317 (1974); East Camelback Homeowners Ass'n v. Arizona Foundation for Neurology and Psychiatry, 19 Ariz. App. 118, 505 P.2d 286 (1973); Florida Home Builders Ass'n v. Dep't of Labor and Employment Security, 412 So.2d 351 (Fla. 1982); Florida Medical Ass'n, Inc. v. Dep't of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1983); Farmworker Rights Organization, Inc. v. Dep't of Health and Rehabilitative Services, 417 So.2d 753 (Fla. 1st DCA 1982); Caloosa Property Owners Ass'n, Inc. v. Palm Beach County Board of County Commissioners, 429 So.2d 1260 (Fla. 1st DCA 1983), rev. denied, 438 So.2d 831 (Fla. 1983); Belmont, Public Interest Access to Agencies: The Environmental Problem for the 1980's, 11 S.L.R. 454, 473-4, n. 93 (1982) ("After the supreme court reversal in Florida Home Builders, standing appears to be once again readily available to environmental groups. See, e.g., Booker Creek [v. Dep't of Environmental Regulation], 415 So.2d 781 (Fla. 1st DCA 1982) (reversing agency denial of standing, but affirming agency ruling on substantive claims)").