836 So.2d 1025 (2002)
Patricia H. PENDLETON, Appellant,
v.
Scott WITCOSKI and Garth Witcoski, Appellee.
No. 1D01-3689.
District Court of Appeal of Florida, First District.
November 25, 2002.
Rehearing Denied February 7, 2003.
Robert Rivas, Tallahassee, for Appellant.
Robert E. Biasotti of Carlton Fields, P.A., St. Petersburg; and Luis Prats and Matthew R. Cogburn of Carlton Fields, P.A., Tampa, for Appellees.
PER CURIAM.
Equitable remedy of rescission lies within the sound discretion of the trial court. See Billian v. Mobil Corp., 710 So.2d 984, 990 (Fla. 4th DCA 1998), rev. denied, 725 So.2d 1109 (Fla.1998). To determine whether the trial court abused its discretion, the appellate court must apply the "reasonableness" test. If reasonable people could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable, and there can be no finding of an abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1202-1203 (Fla.1980).
We hold that, under the facts of this case, as shown by the record, reasonable people could differ as to whether there was a mutual mistake of fact going to an essential element of the contract that entitled the parties to rescission of the contract. Therefore, the trial court did not abuse its *1026 discretion in ordering rescission, and we affirm the decision below.
BOOTH and DAVIS, JJ., concur; ERVIN, J., dissents with written opinion.
ERVIN, J., dissenting.
This is an appeal from a final order of the trial court rescinding a contract for sale and purchase of real property. Appellant, Patricia H. Pendleton, raises several issues, but I consider it necessary only to address the first, which is dispositive of the case: that the trial court erred in finding there was a mutual mistake of fact entitling appellees, Scott and Garth Witcoski, to the equitable remedy of rescission. Because I am of the opinion that the parties' mistake did not relate to a basic assumption on which the contract was made, I would reverse the order and remand the case for further proceedings consistent with this opinion.
During the year 1999, Pendleton entered into oral negotiations for the purchase of certain real property owned by the Witcoskis. In October 1999, Pendleton tendered an oral offer of $280,000 for the property, which was zoned residential. The parcel included a home, and the parties contemplated that the property would continue to be used for such purpose. On November 23, 1999, after appellees had orally accepted the offer, the county adopted an ordinance changing the zoning to "village mixed use," which allowed the tract to be used either commercially or residentially. This zoning change became effective in February 2000.
On June 25, 2000, the parties, unaware of the zoning change, signed a contract for the purchase of the property in the amount of $280,000. Shortly after executing the contract, and before the anticipated closing date of September 1, 2000, Scott Witcoski discovered the rezoning change, and that, as a result, the property's value was significantly higher than he had originally believed. A later appraisal, conducted with knowledge of the zoning modification, estimated the property's value at $418,000.
Subsequent attempts to renegotiate the sale of the parcel at a greater sum between the parties failed, and Pendleton sought specific performance of the contract and temporary injunctive relief to prohibit appellees from conveying or encumbering the property, or, in the alternative, damages for breach of contract, attorney's fees and costs. In their answer, appellees relied on the affirmative defense that the agreement was subject to rescission due to a material mistake of fact. Thereafter, as stated, the trial court entered an order in favor of appellees, denying the claim for specific performance and decreeing rescission of the contract.
Our standard of review of an order granting the equitable remedy of rescission is whether the trial court abused its discretion in so deciding. See Billian v. Mobil Corp., 710 So.2d 984, 990 (Fla. 4th DCA 1998). In my judgment, the lower court abused its discretion in reaching its decision on the ground of mutual mistake of fact. Although it is true that the parties were unaware of the zoning change when they entered into their written contract to buy and to sell, such lack of knowledge does not, as a matter of law, equate to a mutual mistake of fact essential to entitle appellees to a rescission of the contract. The term "mutual mistake of fact" is one of law, and the remedy is available only if the mistake is both mutual and the fact is of the essence of the contract. Worsham v. Pierce, 251 So.2d 896, 898 (Fla. 1st DCA 1971). Because the term "essence of contract," as used in Worsham, appears to be substantially the same as the expression "basic assumption on which the contract was made," as defined in the Restatement (Second) of Contracts (1979), I consider it helpful to consult pertinent portions of the *1027 Restatement regarding just what type of mistake permits avoidance of a contract.
In the case at bar, the lack of knowledge by both parties at the time of the contract as to the change in the zoning regulations appears to comply with the definition of mistake, set out as follows in section 151[1] of the Restatement: "A mistake is a belief that is not in accord with facts." The comments to section 151 explain the term as follows:

a. Belief as to facts. In this Restatement the word "mistake" is used to refer to an erroneous belief. A party's erroneous belief is therefore said to be a "mistake" of that party. The belief need not be an articulated one, and a party may have a belief as to a fact when he merely makes an assumption with respect to it, without being aware of alternatives. The word "mistake" is not used here, as it is sometimes used in common speech, to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief.
Perhaps an even more significant comment, as applied to the case at bar, than that relating to one's mistaken belief as to the facts, is comment b, pertaining to a party's mistake in regard to the law. Comment b provides:

Facts include law. The rules stated in this Chapter do not draw the distinction that is sometimes made between "fact" and "law." They treat the law in existence at the time of the making of the contract as part of the total state of facts at that time. A party's erroneous belief with respect to the law, as found in statute, regulation, judicial decision, or elsewhere, or with respect to the legal consequences of his acts, may, therefore, come within these rules.
The Restatement highlights comment b with the following pertinent illustration:
3. A contracts to sell a tract of land to B. Both parties understand that B plans to erect an office building on the land and believe that he can lawfully do so. Unknown to them, two days earlier a municipal ordinance was enacted requiring a permit for lawful erection of such a building. There is a mistake of both A and B. Its legal consequences, if any, are governed by the rule stated in § 152. See Illustration 7 to § 152.
The facts set out in the above example are somewhat similar to those at bar because, at the time of the execution of the contract, a change in the law had occurred that affected the use of the propertya change of which all of the parties were then unaware. As noted in the preceding illustration, the question whether the party seeking to avoid the enforcement of the contract may be entitled to relief turns on a reading of section 152 of the Restatement, which provides:
(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.
(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.
As comment a to section 152 explains, the party adversely affected by a mistake of fact must satisfy three conditions:

*1028 First, the mistake must relate to a "basic assumption on which the contract was made." Second, the party seeking avoidance must show that the mistake has a material effect on the agreed exchange of performances. Third, the mistake must not be one as to which the party seeking relief bears the risk.[2]
Consequently, it is not enough to satisfy one or two of the above three prerequisites. Rather, all of them are required to be met before a party is entitled to a discharge of his or her contractual obligations.
Returning to the illustration posed under section 151, regarding the contract to purchase realty for the buyer's purpose of constructing an office building, that example also referred to illustration 7, provided under section 152, to resolve the question whether the party adversely affected by a change in the law was entitled to avoidance of the contract. The latter illustration explains that when determining whether the mistake has a material effect on the exchange of performances, "the court will consider not only the decrease in its desirability to B [the buyer] but also any exchange to A [the seller] through his receiving a higher price than the land would have brought on the market had the facts been known."
Superficially, illustration 7 supports the lower court's decision to rescind in that the order clearly focused upon the advantage which Pendleton would obtain in acquiring a parcel of property whose valueunknown to the partieswas enhanced by a change in the property's zoning at the time of the contract. It should be understood, however, that illustration 7 was provided only to explain one of the three conditions necessary to avoid enforcement of a contract, that pertaining to material effect on the agreed exchange. The illustration, moreover, implicitly presumed that the party seeking relief had satisfied the first of the three conditions necessary for avoidance of the contract, i.e., that the mutual mistake related to a "basic assumption on which the contract was made." Unlike the facts supplied in the above illustration to the Restatement, the circumstances at bar fail to support any such legal conclusion. In my judgment, the resolution of the issue whether the lower court acted within its discretion in ordering rescission turns on what constitutes the parties' basic assumption on which the contract was made.
Comment b to section 152 explains that "[t]he term `basic assumption' has the same meaning here as it does in Chapter 11 [of the Restatement ] in connection with impracticability (§§ 261, 266(1)) and frustration (§§ 265, 266(2)). See Uniform Commercial Code § 2-615(a)." Typical of all the above provisions is that contained in section 2-615(a), which excuses a seller's performance "if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made." § 672.615(1), Fla. Stat. (1999).
Section 266 of the Restatement, pertaining to impracticability or frustration existing at the inception of a contract, provides that a party adversely affected by the unanticipated occurrence of a contingency may be discharged from his or her contractual obligation under the following circumstances:
(1) Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.

*1029 (2) Where, at the time a contract is made, a party's principal purpose is substantially frustrated without his fault by a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty of that party to render performance arises, unless the language or circumstances indicate the contrary.
Id. at 338-39.
Neither the concepts of impracticability nor frustration are applicable to the case before us. The parties' performance under the contract below was not rendered impracticable by the occurrence of the event in questiona change in the law which permitted the parcel to be used for either a residential or commercial purpose. Indeed, there was no impediment to performance by either party. Following rezoning, the property's continued use for a residential purpose was not extinguished by the change. For the same reason, the Witcoskis' principal purpose in selling the property was not substantially frustrated by the amendment. Comment a to section 265, relating to discharge by frustration, sets out the requirements for the discharge of a party's duty:
First, the purpose that is frustrated must have been a principal purpose of that party in making the contract. It is not enough that he had in mind some specific object without which he would not have made the contract. The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract. Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made.
Illustration 1 provided under section 152 is illustrative of the term "basic assumption":
A contracts to sell and B to buy a tract of land, the value of which has depended mainly on the timber on it. Both A and B believe that the timber is still there, but in fact it has been destroyed by fire. The contract is voidable by B.
Obviously, the parties therein clearly anticipated the nonoccurrence of a fire, which was the basic assumption on which they contracted, i.e., that the property would be conveyed with standing timber. Similarly, in the example pertaining to the sale of a tract of land which the buyer intended to be used for the construction of an office building, it is obvious that neither party anticipated the occurrence of the requirement that the property must first be permitted before an office building could be constructed on it. In each case, the unanticipated events affected the parties' basic assumption as to how the property would be used.
In the case at bar, however, the basic assumption on which the contract was made, the sale of a residence, was not affected by the change in the zoning regulations. Thus, the property's altered use had no effect whatsoever on the benefit for which each party bargained. As a consequence, the Witcoskis failed to show that the mutual intention of the parties to sell and buy residential property was frustrated by the mistake that the property could also be used for a commercial purpose. Therefore, the court erred in granting rescission of the contract on the ground of mutual mistake of fact.
Even if it could be said that the above condition had been satisfied, comment a to section 152 further points out: "The rule stated in this Section is subject to that in *1030 § 157 on fault of the party seeking relief." Section 157 in turn provides:
A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.
Comment a to section 157 provides that the failure to act in good faith
bars a mistaken party from relief based on a mistake that otherwise would not have been made. During the negotiation stage each party is held to a degree of responsibility appropriate to the justifiable expectations of the other. The terms "good faith" and "fair dealing" are used, in this context, in much the same sense as in section 205[.]
In comment d to section 205 of the Restatement, relating to the duty of good faith and fair dealing, it is stated: "A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off...." (Emphasis added.)
In the case at bar, the zoning change, permitting the property to be used either commercially or residentially, had been adopted seven months before and made effective four months before the execution of the parties' written contract; yet appellees, although charged with constructive notice of the zoning ordinance,[3] at no time prior to the execution of the contract took it upon themselves to ascertain whether the use of the property had been altered in any degree. In my judgment, appellees' lack of diligence, even if all conditions essential for the establishment of mutual mistake of fact had been satisfied, precluded them from seeking rescission of the contract. See also Hartle v. United States, 22 Cl.Ct. 843 (Cl.Ct.1991) (holding that mutual mistake of law regarding zoning requirements for property did not warrant rescission).
NOTES
[1] This court has specifically followed section 151 in a different context in Barnacle Bill's Seafood Galley, Inc. v. Ford, 453 So.2d 165, 167 n. 5 (Fla. 1st DCA 1984)(quoting the Restatement, which states that the parties' erroneous belief must exist at time of making of contract).
[2] The last element is not applicable to the facts at bar.
[3] See Fla. Land Co. v. City of Winter Springs, 427 So.2d 170, 173 (Fla.1983) (noting that sufficient notice was provided for zoning change that was subject to public hearing).