# Third District Court of Appeal

## State of Florida

Opinion filed March 15, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1201
Lower Tribunal No. 15-24018
_____

**Village of Palmetto Bay, Florida,**
Appellant,

vs.

**Alexander School, Inc.,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Lehtinen Schultz Riedi Catalano de la Fuente, PLLC and Dexter W. Lehtinen and Claudio Riedi, for appellant.

Bilzin Sumberg Baena Price & Axelrod LLP and José M. Ferrer and Yasmin Fernandez-Acuna, for appellee.

Before SUAREZ, C.J., and FERNANDEZ and SCALES, JJ.

SUAREZ, C.J.

The Village of Palmetto Bay (the "Village") appeals a final summary judgment entered in favor of Alexander Schools, Inc. ("Alexander School")

finding Section 10.1 of the Village's Charter to be unconstitutional.  We reverse the trial court's ruling.  We find Section 10.1 is not arbitrary or ambiguous and the record shows that Alexander School failed to meet the high burden required to show that the ordinance is unconstitutional.

Alexander School owns property within the Village on which it operates a private Montessori school.  In 2013 Alexander School wanted to increase the enrollment at the school and sought permission from the Village to do so.  Consistent with Section 10.1 of its Charter, the Village advised the School that in a public election of the registered voters within the Village, 75% of the voters within a radius of 2000 feet from the school would have to approve the increase in enrollment before the Village would act on the application and hold a public hearing before the Village Council.[1]  In an election that occurred in May 2013, Alexander School failed to obtain approval of 75% of such voters.  Therefore, the

[1]  Section 10.1 states:  "The number of enrolled students of any private school within the Village of Palmetto Bay shall not be increased without prior approval by a fourth- fifths (4/5) vote of the Village Council.  No such approval shall be adopted by the Village Council until the request to increase enrolled students is submitted to a vote of Village of Palmetto Bay electors living within a 2,000 foot radius of the applicant school property by referendum, and 75 percent of the electors voting approve of such increase in enrolled students.  A list of Village of Palmetto Bay registered voters within the 2,000-foot radius of the school property shall be prepared by the Village Clerk.  Any elector who resides on property or a portion of property that is within the 2,000-foot radius of the school seeking to increase the number of its enrolled students shall be eligible to vote in the election required under this provision.  The costs of the election (including reimbursement to the city for all costs relating to the preparation of the list of eligible electors) required under this provision shall be borne by the school seeking to increase the number of its enrolled students."

issue never made its way to a hearing before the Village Council. Alexander School made another attempt to obtain voter approval in April 2015, but again fell short of the approval of 75% of voters within the 2000 foot radius of its property.

Alexander School then filed this action challenging the constitutionality of Section 10.1 of the Charter. Alexander School claimed the ordinance was unconstitutional because Section 10.1 of the Village Charter, a) deprives it of due process because the Village is required to exercise its quasi-judicial function of zoning regulation through public hearing at which fact-based evidence can be adduced, b) reduces the land regulation function to a popularity contest and constitutes an improper delegation of the Village's land-use function to a small subset of voters, c) violates the Village's Citizens' Bill of Rights which purports to permit any citizen the right to present issues to the Village Council, d) deprives private schools of due process because the requirements of Section 10.1 are imposed solely upon a limited group of citizens (private schools) who seek only to make lawful use of their property, e) is arbitrary and capricious because it has no rational relationship to the public safety of the surrounding community, and, f) imposes impossibly high limits to obtain voter approval.

After engaging in some discovery, Alexander School moved for summary judgment and the trial court granted its motion finding Section 10.1 unconstitutional "because it is arbitrary and unreasonable, and has no relation to the public safety, health, morals, comfort or general welfare of the surrounding

3

community." The trial court also found Section 10.1 unconstitutional in that it "deprives [Alexander School] of its constitutional right to be heard." The trial court accepted the argument that because the section does not allow Alexander School to present its application directly to the commission for a public hearing without first having a public vote, the school was deprived due process. We find the trial court erred on both grounds.

Constitutional challenges to an ordinance are legal questions reviewed de novo by the appellate courts. Caribbean Conservation Corp. v. Fla. Fish and Wildlife Conservation Comm'n, 838 So. 2d 492 (Fla. 2003). As stated by this court in Kuvin v. City of Coral Gables, 62 So. 3d 625, 632 (Fla. 3d DCA 2010) "[M]unicipal zoning ordinances, which are legislative enactments, are presumed to be valid and constitutional. … [Z]oning restrictions must be upheld unless they bear no substantial relation to legitimate societal policies or it can be shown that the regulations are a mere arbitrary exercise of the municipality's police power." (internal quotations and citations omitted). Moreover, "the burden is upon him who attacks such regulation to carry the extraordinary burden of both alleging and proving that it is unreasonable and bears no substantial relation to public health, safety, morals or general welfare." Id., emphasis added, internal citations omitted. See also, Fox v. Town of Bay Harbor Islands, 450 So. 2d 559, 560 (Fla. 3d DCA 1984).

The record in this case shows that Alexander School failed to carry its "extraordinary burden" of proving that Section 10.1 is unreasonable and bears no substantial relation to public health, safety, morals or general welfare. In support of its Motion for Summary Judgment Alexander School relied upon one answer to one Interrogatory provided by the Village.[2] Alexander School also argued that because Section 10.1 applies only to private schools, but not to allegedly similar places of "public assembly" such as public or charter schools, theaters and houses of worship it imposes impermissibly disparate treatment on private schools. The problem here is that Alexander School made no evidentiary showing that such locations or entities bear any similarity to its private Montessori school in terms of usage or that they have or potentially have similar impacts upon public safety.[3] Rather, Alexander School appears to simply have presumed such semblance to be true. In addition, Alexander School made no attempt to provide any evidentiary showing as to what effect its proposed enrollment increase might have on the

---

[2] [INTERROGATORY] Please explain specifically and with particularity whether an increase in enrollment by 59 students would affect the public health, safety, moral or general welfare of the Village's citizenry any differently if it was requested by a public school.

[ANSWER] Assuming hypothetically, that the public school in [the] interrogatory [] would be located at the same location and have the same physical layout and the same number of existing students as the hypothetical private school; No. It would not. However, a municipality cannot regulate public schools the same way it can regulate private schools.

[3] Moreover, Alexander School does not appear to dispute that the Village has no jurisdiction over public schools, so its attempt to analogize the Village's reaction to an increase in enrollment of a hypothetical public school is inapt.

public health or safety in the form of increased traffic or other such potential impacts. Nor did Alexander School attempt to make any showing of the absence of a rational relationship between the requirements of Section 10.1 of the Village Charter and public health or safety. Alexander School argues that once it made a showing of allegedly disparate treatment, the burden shifted to the Village to demonstrate a material issue of fact as to that issue. We do not agree with that argument given the inadequate evidence Alexander School provided regarding any comparability between itself and the other types of entities it attempted to compare itself to.

We conclude that Alexander School fell far short of meeting its "extraordinary burden" of showing that Section 10.1 is "unreasonable and bears no substantial relation to public health, safety, morals or general welfare." Kuvin, supra, 62 So. 3d at 632. Consequently, we reverse the trial court's finding of unconstitutionality on that ground.

We also reverse the trial court's finding that Section 10.1 of the Charter deprived Alexander School of its constitutional right to be heard (due process). Charter provisions such as Section 10.1 that allow some decisions to be made by voter referendum do not violate due process rights. Florida Land Co. v. City of Winter Springs, 427 So. 2d 170, 172-74 (Fla. 1983). Likewise pre-conditions to an application for zoning relief do not deprive a party of due process. Id., Bd. of Cnty. Comm'rs of Brevard County, Florida v. Snyder, 627 So. 2d 469 (Fla. 1993).

6

Reversed and remanded.