LEWIS, J.
This case is before the Court to review the decision of the First District Court of Appeal in Florida Department of Highway Safety & Motor Vehicles v. Wiggins, 151 So.3d 457 (Fla. 1st DCA 2014). Here, the First District certified a question of great public importance, which we rephrase as follows:
WHETHER A CIRCUIT COURT CONDUCTING FIRST-TIER CER-TIORARI REVIEW UNDER SECTION 322.2615, FLORIDA STATUTES, APPLIES THE CORRECT LAW BY REJECTING OFFICER TESTIMONY AS COMPETENT, SUBSTANTIAL EVIDENCE WHEN THAT TESTIMONY IS CONTRARY TO VIDEO EVIDENCE.
This certified question presents a pure question of law and is, therefore, subject to de novo review. See Jackson-Shaw Co. v. Jacksonville Aviation Auth., 8 So.3d 1076, 1084-85 (Fla. 2008). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
We answer the rephrased certified question in the affirmative and hold that in this context of section 322.2615 first-tier review, a circuit court must review and consider video evidence of the events which are of record as part of its competent, substantial evidence analysis. Further, we hold in this limited context that evidence which is totally contradicted and totally negated and refuted by video evidence of record, is not competent, substantial evidence.
Statutory Background
Section 322.2615, Florida Statutes, provides for the suspension of one’s driving privilege for driving under the influence (DUI). Specifically, the statute authorizes a law enforcement officer to suspend one’s driving privilege when that person is driving or in physical control of a vehicle and has a blood- or breath-alcohol level of .08 or higher. Alternatively, a law enforcement officer may also suspend the driving privilege of one who refuses to submit to a urine, breath, or blood-alcohol test. § 322.2615(1)(a), Fla. Stat. (2011). If the driver refuses to perform a lawfully requested urine, breath, or blood test, the officer must notify the driver that his or her license will be suspended for a year, or eighteen months if the driver has previously had his or her license suspended for *1167 failure to submit to such tests. § 322.2615(1)(b)1.a. Section 322.2615 is to be read in pari materia with section 316.1932, Florida Department of Highway-Safety & Motor Vehicles v. Hernandez, 74 So.3d 1070, 1076 (Fla. 2011), as revised on denial of rehearing (Nov. 10, 2011), a statute which provides that the requested sobriety tests “must be incidental to a lawful arrest” and that the officer must have “reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of alcoholic beverages.” § 316.1932(1)(a)1.a., Fla. Stat. (2015). Once the license is suspended, the driver may request review by the Department of Motor Safety and Vehicles (Department) through an administrative hearing before the Department within ten days after issuance of the notice of suspension. § 322.2615(1)(b)3. The statute further provides that the review hearing will essentially function as a trial before the Department:
Such formal review hearing shall be held before a hearing officer designated by the department, and the hearing officer shall be authorized to administer oaths, examine witnesses and take testimony, receive relevant evidence, issue subpoenas for the officers and witnesses identified in documents [submitted for review], regulate the course and conduct of the hearing, question witnesses, and make a ruling on the suspension.
§ 322.2615(6)(b).
During a formal review hearing for license suspension, the hearing officer is limited to the following questions, which must be established by a preponderance of the evidence:
1.Whether the law enforcement officer had probable cause to believe that the person whose license was suspended was driving or in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages or chemical or controlled substances.
2. Whether the person whose license was suspended refused to submit to any such test after being requested to do so by a law enforcement officer or correctional officer.
3. Whether the person whose license was suspehded was told that if he or she refused to submit to such test his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months.
§ 322.2615(7)(b). The hearing officer’s authorization to determine the “lawfulness of the stop” is built into the provision of the essential element ,of whether probable cause existed. Schwartz v. Fla. Dep’t of Highway Safety & Motor Vehicles, 920 So.2d 664, 665 (Fla. 3d DCA 2005) (quoting Fla. Dep’t of Highway Safety & Motor Vehicles v. DeShong, 603 So.2d 1349, 1351 (Fla. 2d, DCA 1992)). Finally, the hearing officer’s decision may be reviewed by an Article V judge or judges in a circuit court by a writ of certiorari. § 322.2615(13).
Facts and Procedural Background
The facts surrounding the case before us concern the stop and arrest of Joseph B. Wiggins for driving under the influence of alcohol. Because there is a conflict between the facts as reported by the arresting officer and the facts as demonstrated by the real-time video evidence of the event, we will present both versions of the facts.

Arrest Report and Testimony

According to the oral testimony of the officer based on his report, on the night of the stop, there was no surrounding traffic. Upon his first observation of Wiggins’ truck, Officer Saunders wrote in the arrest report that the vehicle “appeared to *1168 swerve from one lane to another.” Both Saunders and Wiggins were driving in the same direction, but Wiggins drove in the right lane while Saunders followed in the left lane. Saunders further reported that Wiggins drifted within his lane, traveled thirty miles per hour in a forty-five mile per hour zone, and crossed over the outside lane line — nearly striking a right-side curb before swerving back into his lane. Saunders stated that, as they approached an intersection, Wiggins “braked hard for no apparent reason and then accelerated back to about 30 miles per hour,” continued to drift over the line, and nearly hit the curb again. As he entered another intersection, Wiggins reportedly “braked hard again and swerved right” and almost hit the curb. Wiggins then “made a quick lane change into the left lane in front of [Saunders]” and tapped his brakes. The report further states that as they approached another traffic light, Wiggins passed the opening for a left turn lane and then slowly drifted over the line to enter the lane. Wiggins then “made a very wide left turn and had to realign his truck as he straightened out.” Believing Wiggins to be impaired, Saunders activated his emergency lights. Wiggins reportedly continued in a straight path and made a sharp right turn into a drug store parking lot. Wiggins then drove through the marked parking spaces and stopped, partially obstructing the travel lane.
Thereafter, Saunders reported that he approached Wiggins, who already had his driver’s license and registration in hand, and explained the reason for the stop. Saunders noticed a strong odor of alcohol and observed that Wiggins’ eyes were bloodshot and glassy. In addition, Saunders noted that “[h]is movements were slow and deliberate.” When asked if he had been drinking any alcoholic beverages, Wiggins reportedly replied that he had consumed a few drinks. Wiggins was then asked to perform field sobriety exercises but refused. Saunders informed Wiggins that his refusal to participate in field sobriety exercises would be used against him in court and asked Wiggins to exit the vehicle. After Wiggins refused, Saunders advised him that he was being arrested for driving under the influence. Eventually, Saunders convinced Wiggins to exit the vehicle. Wiggins was subsequently transported to the Clay County Jail, where Saunders requested a breath test.
After his arrest, Wiggins requested a formal hearing before the Department pursuant to section 322.2615. During the hearing, Saunders acknowledged that it was the sheriffs standing general order to also record contact with a person that an officer believes to be impaired. However, Saunders failed to activate his body camera and microphone during his direct contact with Wiggins. Therefore, the video recording available at the hearing was a real-time video taken from Saunders’ dashboard camera with no audio.
Saunders also admitted that there were inconsistencies between his arrest report and the video. Specifically, the report stated that Wiggins quickly changed lanes in front of Saunders, while the video indicated that Saunders was the one who had changed lanes to get behind Wiggins, and Wiggins then changed into the vacant lane. Otherwise, Saunders continued to insist that Wiggins weaved in and out of his lane, almost hit the curb, braked erratically, and made a wide turn.

Actual Video

Due to the dissent’s representations, we embed a copy of the actual video in this opinion.[1] The dashboard camera on Saun *1169 ders’ vehicle recorded Wiggins’ driving pattern from the time Saunders first saw the vehicle to the time Wiggins was stopped. As Saunders trailed Wiggins’ vehicle that night, the video showed Wiggins driving totally within the proper lines. Wiggins did not cross any lines, nor did he nearly hit the curb. Wiggins did change lanes only once in an apparent attempt to clear the lane for Saunders, but he utilized his turn signal before doing so. Wiggins then activated his turn signal to move into a left turn lane, braked in preparation to turn at a traffic light, and made a normal left turn once the traffic light turned green. As Wiggins turned left, Saunders activated his emergency lights. Upon activation of the police emergency lights, Wiggins made a normal right turn into an empty drug store parking lot. The area was dark and Wiggins came to a stop and parked in front of the building. Saunders subsequently exited his vehicle and approached Wiggins’ vehicle with another officer.
Notwithstanding that the real-time video evidence totally contradicted and refuted the testimony and arrest report of Officer Saunders, the hearing officer affirmed the suspension of Wiggins’ license. The dissent has attempted to incorrectly transform the appellate posture of this case into a de novo factual dispute, contrary to all concepts of appellate procedure.
Circuit Court Opinion and Order
Subsequent to the Department’s administrative hearing decision, Wiggins filed a Petition for Writ of Certiorari in the Fourth Judicial Circuit Court pursuant to section 322.2615, Florida Statutes. The first level of review in the circuit court was limited to whether Wiggins was accorded procedural due process, whether the essential requirements of the law had been observed by the Department, and whether the administrative findings and judgment of the Department were supported by competent, substantial evidence. The court recognized that, as a circuit court conducting first-tier certiorari review, it was not permitted to totally reweigh the evidence de novo. However, the court reasoned that the objectivity and neutrality of the video evidence placed the circuit court in the same position as the hearing officer when reviewing the evidence, and that as an Article V judge, the court had an obligation to review the evidence to determine whether competent, substantial evidence had been presented.
Here, the court concluded that the video evidence refuted both the arrest report and Saunders’ testimony. Specifically, the court found that the vehicle in the video did not swerve within its lane, did not cross over the lane line, did not nearly strike the curb, nor did it brake for no reason. Furthermore, the court determined that the video depicted Wiggins intentionally changing lanes into the turn lane with proper signals and thereafter making a normal left hand turn, as opposed to making a wide turn.
Based on these clearly revealed contradictions, the circuit court concluded that the arrest report and Saunders’ testimony based on that incorrect report failed to constitute competent, substantial evidence. Thus, the circuit court held it was unreasonable as a matter of law for the hearing officer to accept the report and the testimony as true despite the objective and neutral images of the real-time video evidence of the event.
First District Court of Appeal
Following the circuit court’s decision, the Department sought review in the First District Court of Appeal. The district *1170 court’s second-tier review of the circuit court’s order was further limited to only-two questions: (1) whether the circuit court afforded Wiggins procedural due process and (2) whether the circuit court applied the correct law, Wiggins, 151 So.3d at 461-62, a principle consistently violated in the dissenting opinion.
Although the circuit court based its order on its finding that the report and the testimony which were contrary to the real-time video evidence did not amount to competent, substantial evidence, the First District concluded that the circuit court essentially reweighed the evidence f and conducted a de novo review in violation of this Court’s opinion in Dusseau v. Metropolitan Dade County Board of County Commissioners, 794 So.2d 1270 (Fla. 2001). Wiggins, 151 So.3d at 462-63. Specifically, the First District opined that Dusseau established that a circuit court is limited to a determination of whether an agency’s decision was supported by competent, substantial evidence. Id. at 463. Accordingly, the district court concluded that the circuit court in the instant case should have ended its review when it found evidence in the arrest report and testimony that supported the agency’s decision. Id. at 464. Further, the court reasoned that the hearing officer’s factual findings should have been accorded deference because she is experienced on such matters and heard the live testimony herself. Id. at 465.
The First District granted the Department’s petition, quashed the circuit court’s order, and remanded with directions' to apply the law. Id. at 471. Finally, taking into consideration the prevalence of video evidence, the First District certified the following question of great public importance for this Court’s review:
WHETHER A CIRCUIT COURT FAILS TO APPLY THE CORRECT LAW BY REJECTING AS NON-CREDIBLE THE ENTIRETY OF AN ARRESTING OFFICER’S TESTIMONY AND REPORT CONCERNING A TRAFFIC STOP, UPON WHICH THE HEARING OFFICER’S FACTUAL FINDINGS RELIED, BASED SOLELY ON THE CIRCUIT COURT’S OWN INDEPENDENT REVIEW AND ASSESSMENT OF EVENTS ON THE VIDEO OF A TRAFFIC STOP?
Id. at 471.
In his dissent, Judge Van Nortwick disagreed that Dusseau required a culling through the record only for whatever facts supported the administrative hearing order. Id. at 474 (Van Nortwick, J,, dissenting). Otherwise, the competent, substantial evidence standard would be rendered useless. Id. at 474. In the opinion of Judge Van Nortwick, evidence that is unreliable is not competent, substantial evidence. Id. at 476.
Analysis
As explained on numerous occasions, a circuit court conducting first-tier certiorari review of an administrative decision is limited to determining (1) whether due process was accorded, (2) whether the essential requirements of the law were observed, and (3) whether the administrative findings and judgment were supported by competent, substantial evidence.[2] Nader *1171 v. Fla. Dep’t of Highway Safety & Motor Vehicles. 87 So.3d 712, 723 (Fla. 2012) (quoting Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla. 1995)); Broward Cty. v. G.B.V. Int’l, Ltd., 787 So.2d 838, 843 (Fla. 2001) (quoting City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla. 1982)). The second-tier certiorari review is more narrowly limited to (1) whether the lower tribunal afforded procedural due process and (2) whether, the lower tribunal applied the correct law. Heggs, 658 So.2d at 530.
This Court has deferred to the findings of an agency fact-finder in the context of zoning and policy determinations, as the agency fact-finder in theory has the requisite experience, skill, and perspective to adequately adjudicate specialized proceedings. See Dusseau, 794 So.2d at 1276. In the spirit of deferring to the agency fact-finder in some special cases, this Court has further concluded that when determining whether the administrative decision was founded on competent, substantial evidence, the circuit court may only look for facts in the record that support the agency fact-finder’s conclusions. See, e.g., G.B.V. Int’l, 787 So.2d at 845 (concerning review of a zoning decision); Dusseau, 794 So.2d at 1275-76 (also zoning); Florida Power & Light Co. v. City of Dania, 761 So.2d 1089, 1093 (Fla. 2000) (also zoning); Educ. Dev. Ctr., Inc. v. City of W. Palm Beach Zoning Bd. of Appeals, 541 So.2d 106, 108 (Fla. 1989) (also zoning); De Groot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957) (concerning removal of an employee of the Duval County School Board).
However, this Court and. others have voiced concerns with fairness and due process specifically in the context of hearings held before Department hearing officers under section 322.2615. See, e.g,, Hernandez, 74 So.3d at 1079 (stating that a petitioner seeking review of a license suspension under section 322.2615 must be afforded reasonable notice and meaningful review of the lawfulness of the suspension); Forth v. Dep’t of Highway Safety & Motor Vehicles, 148 So.3d 781, 782 (Fla. 2d DCA 2014) (quashing the circuit court’s' decision to remand to the Department after it was found that the hearing officer was not impartial); Fla. Dep’t of Highway Safety & Motor Vehicles v. Griffin, 909 So.2d 538, 543 (Fla. 4th DCA 2005) (“While we see no constitutional infirmity in non-lawyers serving as hearing officers under section 322.2615, we do strongly caution those hearing officers that they must take extraordinary care to be as impartial and neutral as the members of the judiciary are required to be.”); Fla. Dep’t of Highway Safety v. Dean, 662 So.2d 371, 373 (Fla. 5th DCA 1995), cause dismissed, 667 So.2d 774 (Fla. 1996) (“The frequency with which conscientious trial judges of this state issue decisions that have the effect of providing more procedural safeguards to licensees in these revocation hearings suggests a continuing concern about the fairness of this statutory procedure.”); Dep’t of Highway Safety & Motor Vehicles v. Stewart, 625 So.2d 123, 124 (Fla. 5th DCA 1993) (reasoning that although the procedure under section 322.2615 is expeditious and facially valid, “[l]ower courts may find, under the facts of a specific case, that a suspendee’s rights have not been respected”). Today, we address those concerns.
*1172 The substance of cases that involve special issues of zoning or policy decisions greatly differ from those that involve license suspensions for DUI. A court conducting section 322.2615 first-tier certiora-ri review faces constitutional questions that do not normally arise in other administrative review settings. Every case involving a license suspension contains a Fourth Amendment analysis of whether there was reasonable suspicion to stop the vehicle or probable cause to believe that the driver was in physical control of the vehicle while under the influence of alcohol. § 322.2615(7)(b)1. With that, first-tier review under this particular statute demands a close review of the factual record to determine whether the hearing officer’s findings were supported by competent, substantial evidence and whether the essential requirements of the law were applied. Nader, 87 So.3d at 723. Some consideration of the evidence is inescapable in the competent, substantial evidence determination. These are legal questions that call for an unbiased review, rather than being solely left to the discretion of a hearing officer who is actually employed by the Department. While a policy that provides deference to the agency fact-finder may be appropriate in special areas such as zoning or policy decisions, which involve concepts that require a certain level of expertise that can be provided by a nonlawyer, the same does not hold true for the questions of constitutional law that arise under section 322.2615. It is no wonder, then, that the Legislature created a statute to tailor review for this narrow situation.
The kind of evidence presented in the context of a license suspension hearing is also distinguishable from that presented in the context of zoning or policy decisions. With the advancement of technology, video evidence has become increasingly prevalent in the arena of law enforcement. Officers are now equipped with dashboard and body cameras to record traffic incidents. Whereas prior to the development of this technology officers were limited to what their human memory could recall along with limited reports, an officer can now revisit the event without the distractions or stress that may arise when one is in the present moment. Unlike testimonial evidence based on a written report, the objective nature of video evidence allows it to be viewed by the Article V judicial officer on first-tier certiorari without the need for interpretations of the hearing officer.
We respect the authority and expertise of law enforcement officers, and thus rely on an officer’s memory when necessary. But we would be remiss if we failed to acknowledge that at times, an officer’s human recollection and report may be contrary to that which actually happened as evinced in the real time video. This is the reality of human imperfection; we cannot expect officers to retain information as if he or she were a computer. Therefore, a judge who has the benefit of reviewing objective and neutral video evidence along with officer testimony cannot be expected to ignore that video evidence simply because it totally contradicts the officer’s recollection. Such a standard would produce an absurd result. Yet, the reasoning of the Department and the dissent would require exactly that.
We disagree with the First District that the circuit court’s refusal to accept the officer’s testimony as competent, substantial evidence constituted a reweighing of the evidence. Notably, in another case involving section 322.2615 review, the'First District concluded that documents that are hopelessly in conflict could not amount to competent, substantial evidence. Dep’t of Highway Safety & Motor Vehicles v. Trimble, 821 So.2d 1084, 1086 (Fla. 1st DCA 2002). Here, not only is the evidence hope *1173 lessly in conflict, but the circuit court had the benefit of having objective and neutral video evidence available for review of the actual event, as opposed to two conflicting documents that appear equally reliable. We will not ask circuit courts conducting license suspension review to ignore this benefit.
We find the dissenting opinion of Judge Van Nortwick below to be far more compatible with the law of legal review under these facts. Relying on this Court’s opinion in Tibbs v. State, 397 So.2d 1120, 1123 (Fla. 1981), Judge Van Nortwick aptly pointed out that the weight and sufficiency of evidence are two separate concepts. Specifically, sufficiency tests the adequacy and credibility of the evidence, whereas weight refers to the balance of the evidence. See Wiggins, 151 So.3d at 476 (Van Nortwick, J., dissenting). In the case before us, the officer’s testimony that there was reasonable suspicion to stop Wiggins is flatly contradicted and refuted by video evidence of record. Contrary to the officer’s testimony, the video indicates that Wiggins did not veer out of his lane, did not weave within his lane, did not brake erratically, did not make a wide turn, or do anything else to elicit reasonable suspicion. The Department contends that the circuit court reweighed the evidence in concluding that the video refuted the testimony of the officer. We disagree. The circuit judge here did not engage in a reweighing of the evidence, but rather, determined that the contradicted testimony of the officer was not sufficient to amount to competent, substantial evidence.
Evidence that is confirmed untruthful or nonexistent is not competent, substantial evidence. Competent, substantial evidence must be reasonable and logical. Gonci v. Panelfab Prods., Inc., 179 So.2d 856, 858 (Fla. 1965). It follows that a competent, substantial evidence analysis demands an honest look at the evidence available. Otherwise, we are asking judges to simply parrot the findings of the hearing officer, thus reducing the task of a constitutional judge to providing a predetermined stamp of approval. To hold that a judge on first-tier certiorari review must accept testimony that, as here, is clearly contradicted and totally refuted by objective video evidence, would be an injustice to Florida drivers. The law under section 322.2615 is not designed to protect the decision of the hearing officer, but to preserve due process and justice. The Legislature clearly intended that the circuit court conduct a meaningful review of the record. Whether a right or a privilege, driving is no doubt an important facet in the lives of Florida citizens. See Hernandez, 74 So.3d at 1078 (noting that regardless of whether driving is a right or a privilege, “the loss of a driver’s license is most definitely an extreme hardship”). The law is designed and intended to protect that significant interest, not exploit it. Had the evidence in conflict been merely documentary or testimonial, as we often see in the context of other administrative hearings, perhaps more deference could be afforded to the hearing officer. In the context of section 322.2615 first-tier certiorari, however, objective and neutral video evidence is often available to confirm the true facts.
We do not condone drunk driving by any means, but we cannot encourage application of our laws in a manner that upholds stops without reasonable suspicion. Here, the Department asks us to stretch our imaginations to a situation where the officer would have reasonable suspicion to conduct a stop, even though there is clear, objective, neutral, and overwhelming video evidence of the opposite. This would not be a correct application of the law. Such an interpretation of the law would allow a hearing officer to arbitrarily choose evi *1174 dence without an incentive to listen and evaluate for competent, substantial evidence. This would be an absurd result that we cannot support.
The dissent attempts to improperly transform the decision process and standard of review in this Court in this context into an absolute de novo factual dispute as if we were the circuit court, and we were operating above and beyond the first-tier certiorari review. This attempted transformation is a foundational flaw which causes the'entire dissent to be misdirected.
It is crucial to recognize that there is a true and important distinction between the standards of review conducted by circuit courts upon first-tier certiorari review and that of district courts upon second-tier cer-tiorari review. This Court has repeatedly explained that upon first-tier certiorari review of an administrative decision, the circuit court is limited to determining (1) whether due process was accorded, (2) whether the essential requirements of the law were observed, and (3) whether the administrative findings and judgment were supported by competent, substantial evidence. E.g., Nader, 87 So.3d at 723 (quoting Heggs, 658 So.2d at 530); G.B.V. Int’l, 787 So.2d at 843 (quoting Vaillant, 419 So.2d at 626); Dusseau, 794 So.2d at 1274 (quoting Vaillant); Florida Power & Light, 761 So.2d at 1092 (quoting Vaillant); Educ. Dev. Ctr., 541 So.2d at 108 (quoting Vaillant). In presenting this three-part standard of review for the circuit court, this Court has further emphasized that “[a]s a case travels up the judicial ladder, review should consistently become narrower, not broader.” Heggs, 658 So.2d at 530 (emphasis supplied). Therefore, when conducting second-tier certiorari review, both the district court and this Court are more narrowly limited to determining whether the circuit court (1) “afforded procedural due process” and (2) “applied the correct law.” Nader, 87 So.3d at 717 (citations omitted); see also G.B.V. Int’l, 787 So.2d at 843 (quoting Vaillant, 419 So.2d at 626) Dusseau, 794 So.2d at 1274 (quoting Vaillant); Florida Power & Light, 761 So.2d at 1092 (quoting Vaillant); Heggs, 658 So.2d at 530.
We have previously recognized that while both standards are similar in that they require determinations of due process and proper application of the law, a key difference between first-tier review and second-tier review lies in the competent, substantial evidence prong. Florida Power & Light, 761 So.2d at 1092-93. Notably, the competent, substantial evidence prong is absent from the second-tier standard. Id. Upon making this observation, this Court in Florida Power & Light explicitly concluded that “the district court on second-tier certiorari review may not review the record to determine whether the agency decision is supported by competent substantial evidence.” Id. at 1093 (emphasis in original). Here, the circuit court in the initial step of the review properly performed a competent, substantial evidence analysis and determined that the officer’s testimony did not constitute competent, substantial evidence in light of the conflicting video evidence.
Notwithstanding overwhelming jurisprudence to the contrary, however, the district court below and the dissent here have attempted to incorrectly extend review to the competent, substantial evidence prong and have effectively placed themselves far above the position of a circuit court conducting first-tier review. This amounts to absolute de novo review, which necessarily violates the limited, two-pronged standard of review required by courts conducting second-tier review. See G.B.V. Int’l, 787 So.2d at 845 (explaining that the district court is limited to a two-pronged standard of review, not de novo review).
*1175 Additionally, with the expanded development of technology and the very concerning societal experiences, the use of and request for real-time video of government-citizen confrontational events have moved consideration beyond governmental words purporting to describe events into a broad, more accurate, fair consideration of the actual events as captured on video. Even if it were proper to become engaged in a factual dispute, which it is not on this second-tier review, the dissent would conclude that mere words of the government are sacrosanct and can be used to punish citizens even where totally contradicted by the actual facts captured on video. The dissent presents an approach which is the antithesis of a fair and reasonable system. A government system that would punish its citizens with the use of false evidence of its officers contradicted by real-time video evidence is a system in danger at best.
The legal issues presented to this Court and the district court below is whether real-time video of events can operate to render mere verbal descriptions of purported events to be not “competent, substantial” evidence when the real-time video of the events contradicts and refutes the verbal description. It must also be remembered that the government witness conveniently failed to video his actual personal contact with the citizen in this case, contrary to the standing orders of his superiors, and the government witness also admitted that his written report from which he testified was in conflict with the real-time video of the actual events.
Accordingly, we hold that in the limited context of section 322.2615 first-tier review of a DUI license suspension, a circuit court applies the correct law by rejecting officer testimony as being competent, substantial evidence when that testimony is contrary to and refuted by objective real-time video evidence. That which is found by an Article V judge in this context to be totally refuted by objective, neutral real-time video evidence cannot be deemed competent, substantial evidence.
It is so ordered,
LABARGA, C.J., and PARIENTE, and QUINCE, JJ., and PERRY, Senior Justice, concur.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

. To access the entire real-time video of the events, see https://efactssc-public.flcourts.org/ *1169 CaseDocuments/2014/2195/DashVideo.wmv.

. It is important to distinguish the functions of the common law writ of certiorari and first-tier certiorari review. The common law writ of certiorari allows an upper court-to direct a lower tribunal to inform the upper court of the events below in a pending case so that the upper court can review the proceed-tags for regularity. Broward Cty. v. G.B.V. Int’l, Ltd., 787 So.2d 838, 842 (Fla. 2001), Further, "[t]he [common law] writ functions as a safety net and gives the upper court the prerogative to reach down and halt a miscarriage of justice where no other remedy exists.” Id. This discretionary common law writ *1171 is not intended to redress mere legal error, but rather to fill the gaps between direct appeal and other prerogative writs. Id. This Court has emphasized that the common law writ functions as an extraordinary remedy, not as a second appeal. Id. In contrast, first-tier certiorari review is not a discretionary writ, but a matter of right more similar to a plenary appeal. Id. at 843.