# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2996
_____

ATKINS NORTH AMERICA, INC.,

    Appellant,

    v.

TALLAHASSEE MH PARKS, LLC
and TALLAHASSEE REAL ESTATE
HOLDINGS, LLC,

    Appellees.

_____

On appeal from the Circuit Court for Leon County.
Karen A. Gievers, Judge.

August 29, 2019


KELSEY, J.

Atkins North America appeals a final judgment foreclosing three mortgages held by Tallahassee MH Parks (TMHP) as assignee of the original mortgagee. Atkins is a lienholder with a recorded money judgment against the mortgagor, Tallahassee Real Estate Holdings (TREH). Atkins raises four issues on appeal, one of which we affirm with no further comment. We reverse because we find merit in the other three issues: the mortgage reformation improperly prejudiced Atkins's rights; the amount of the debt was not supported by competent, substantial evidence; and the amount of the debt and corresponding bid credit incorrectly included funds on which the evidence failed to prove the payment of required intangible and documentary stamp taxes.

## Facts

In 2005, TREH obtained three loans from Farmers & Merchants Bank to buy three "crime-ridden mobile home parks with a plan to turn them into affordable housing communities," in the words of TREH's manager and now sole member, Daniel Manausa. The loans were memorialized in three separate notes and secured with three mortgages.

In 2009, Atkins obtained and recorded a final money judgment against TREH for services Atkins provided in the first apartment project, which turned out to be the only one that was completed. Every year from 2006 through 2012, one or more of the notes was renewed; and although there were sporadic capital payments or other decreases in principal, the principal amount of each note was increased at least once and up to three times. In 2013, the bank consolidated the three original notes into two new notes. In 2015, the bank assigned its interests in the new notes and the original mortgages to TMHP.

In 2016, TMHP filed a foreclosure action and asked the court to reform one of the mortgages to include a parcel, Lot 45, that allegedly was omitted from the original mortgage description by mutual mistake of the original parties, TREH and the bank. The foreclosure complaint identified nine persons or entities with recorded liens against the mortgaged properties, but TMHP claimed its interests were superior to the claims of all other lienholders. Atkins was the only defendant that answered the complaint. It denied that its lien was inferior.

At the bench trial, no representative of the bank testified. Mr. Manausa was the sole witness. He testified in support of the mortgage reformation claim that the original parties, TREH and the bank, had intended to add another parcel of land, Lot 45, under one of the mortgages as additional security, but by mutual mistake had failed to document the intention. Over Atkins's objection due to its being prejudiced by such a retroactive modification of the mortgage, the trial court granted reformation.

Regarding the total amount due at foreclosure, Mr. Manausa deferred to the loan documents themselves and a loan summary document created by TMHP. Those documents reflected the

principal balance as of the loan consolidation, but not the balance due at foreclosure. The trial court nevertheless set the amount of damages at the unpaid balance of the three original notes on the date they were consolidated in the two successor notes.

With respect to whether intangible and documentary stamp taxes were paid on all new money, Mr. Manausa admitted that his personal knowledge was limited, and deferred to the loan documents, which he authenticated. He testified that he believed the bank lent TREH new money only twice, and all required taxes were paid; and that any other principal advances were used to pay property taxes or insurance, on which no taxes were due.

The loan documents, however, flatly contradict this testimony. The documents show that the notes were renewed multiple times, and additional principal was advanced in connection with at least six of those renewals. However, none of the advances was designated for tax-exempt payment of taxes or insurance on the properties. On the contrary, two advances were for renovations, one was to rezone twenty-five acres for apartments, and another was for "seven new units." Although any tax payments would be evidenced on the documents themselves, the record shows taxes were paid only on the original loan amounts and two—but not all—subsequent principal advances.

## Analysis

Atkins first claims the court erred when it reformed one of the mortgages, because the reformation prejudiced legal rights Atkins obtained through its pre-reformation money judgment. Second, Atkins claims the record lacked sufficient evidence to support the amount the court determined to be owed on the notes. Third, Atkins claims the judgment is void because TMHP failed to pay required documentary stamp taxes on the notes. We will discuss the issues in turn, beginning with the mortgage reformation.

## The Mortgage Reformation

We reverse as to the effect of the mortgage reformation on Atkins's interests. A mortgage reformation is an equitable remedy within the court's sound discretion. *See Pendelton v. Witcoski*, 836 So. 2d 1025, 1025 (Fla. 1st DCA 2002) (holding the equitable

3

remedy of rescission was "within the sound discretion of the trial court"); *Bevis Constr. Co. v. Grace*, 134 So. 2d 516, 519 (Fla. 1st DCA 1961) (describing a mortgage reformation as an equitable remedy).

A mortgage can be reformed to conform to the parties' original intent, and that reformation generally relates back, but with an important limitation: reformation cannot prejudice a person or entity that had acquired legal rights before the reformation occurs. *See Straight's Tr. v. Comm'r of Internal Revenue*, 245 F.2d 327, 329 (8th Cir. 1957) ("The broad rule as to the effect of a reformation decree is that it relates back to the date of the instrument reformed and is binding upon all except bona fide purchasers without notice 'and those standing in similar relations'[] - in short, covering those who have acquired some legal rights which would be destroyed or injured by subsequent reformation nunc pro tunc.") (citation omitted); *accord Barlow v. Stevens*, 150 So. 245, 246 (Fla. 1933); *Whitice Bonding Agency, Inc. v. Levitz*, 559 So. 2d 755, 756 (Fla. 4th DCA 1990); *Burleson v. Brogdon*, 364 So. 2d 491, 494 (Fla. 1st DCA 1978). "The lien of a judgment creditor stands upon the precise footing of that of a purchaser in good faith, as against a mortgage with an incorrect description." *Whitice*, 559 So. 2d at 756.

Here, Atkins recorded its money judgment in 2009, and therefore it stands in the place of a purchaser in good faith regarding the later-reformed mortgage. The trial court abused its discretion when it reformed the mortgage and injured legal rights Atkins had obtained prior to the reformation, and therefore we reverse this aspect of the final judgment. Atkins has priority as to Lot 45.

## The Sufficiency of the Evidence

We reverse as to balance due, because the trial court's findings are not supported by competent, substantial evidence. "It is axiomatic that the party seeking foreclosure must present sufficient evidence to prove the amount owed on the note." *Wolkoff v. Am. Home Mortg. Servicing, Inc.*, 153 So. 3d 280, 281 (Fla. 2d DCA 2014). Where a foreclosure is tried without a jury, a party may challenge the sufficiency of the evidence on direct appeal without having lodged a contemporaneous objection. *Id.* at 282 (quoting Fla. R. Civ. P. 1.530(e)). We review the court's findings to

4

determine whether they are supported by competent, substantial evidence. *Id.* at 283. Substantial evidence is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *De Groot v. Sheffield*, 95 So. 2d 912, 916 (Fla. 1957); *see also Gonci v. Panelfab Products, Inc.*, 179 So. 2d 856, 858 (Fla. 1965) (noting that competent, substantial evidence must comport with logic and reason). "[A]n essential finding or conclusion [based] solely on unreliable evidence should be held insufficient." *Fla. Rate Conference v. Fla. R. R. & Pub. Utils. Comm'n*, 108 So. 2d 601, 607 (Fla. 1959). Testimony that conflicts with valid documentary evidence is not legally sufficient to support findings or conclusions contrary to the documentary evidence. *Cf. Wiggins v. Fla. Dep't of High. Saf. & Motor Veh.*, 209 So. 3d 1165, 1166 (Fla. 2017) (holding findings based on testimony were not supported by sufficient evidence because the testimony was "totally contradicted and . . . refuted by video evidence"). We cannot accept trial court findings based on clearly unreliable evidence. *See id.* at 1172.

Mr. Manausa authenticated the loan documents and attested to their accuracy, and the documents were admitted into evidence. His testimony, although presented as being based on the loan documents, contradicts the documents in several respects. For instance, the final order states that according to Mr. Manausa's testimony "there had been no principal reduction in the balance due under [the original notes] after the last of the renewals or after those notes were consolidated into [the two successor notes]," but the loan documents clearly show that the outstanding principal balance on one of the successor notes was reduced twice in 2014. This reduction is also reflected in the plaintiff's loan summary sheet, which Mr. Manausa confirmed to be correct. The court's findings on the amount outstanding on the loans, which were based on Mr. Manausa's testimony, are contrary to the very documents on which Mr. Manausa relied. Therefore, his testimony cannot serve as sufficient evidence to support the trial court's finding on the balance due at consolidation, nor to support a finding of balance due at foreclosure. The loan documents must control to determine that issue, which must be quantified on remand.

**Documentary Stamp Taxes**

We reverse the trial court's finding that all required documentary stamp taxes were paid. Mr. Manausa testified that the bank only made two future principal advances to TREH, but the loan documents that he authenticated reference six advances. Because Mr. Manausa's testimony contradicts the very documents he authenticated and confirmed as accurate, his testimony does not constitute legally sufficient evidence on this issue. If the documentary evidence is correct, this may make at least portions of the outstanding balance unenforceable, which in turn would place Atkins in a priority position to the extent of the unenforceable portions of the debt. *See* § 201.08(1)(b); *Glenn Wright Homes (Delray) LLC v. Lowy*, 18 So. 3d 693, 696–97 (Fla. 4th DCA 2009); *Somma v. Metra Elecs. Corp.*, 727 So. 2d 302, 304 (Fla. 5th DCA 1999). However, because the trial court failed to make sufficient factual findings based on the documentary evidence, we are unable to resolve this issue.

In evidentiary proceedings on remand, the parties shall present competent documentary evidence establishing the dollar amount of new-money advances on which taxes were not paid prior to the foreclosure—which amounts are unenforceable as to Atkins and must be deducted from the debt and bid credit. The parties shall present competent documentary evidence proving the accurate enforceable amount due at foreclosure. Atkins shall have first priority as to Lot 45. The trial court shall determine the respective rights of the parties accordingly.

REVERSED and REMANDED.

LEWIS and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

6

Karl E. Pearson of Pearson Doyle Mohre & Pastis, LLP, Maitland, for Appellant.

James M. Durant, Jr. of Boyd & Durant, P.L., Tallahassee, for Appellee Tallahassee MH Parks, LLC; Kyle L. Shaw and Daniel E. Manausa of Manausa Law Firm, P.A., Tallahassee, for Appellee Tallahassee Real Estate Holdings, LLC.