# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-3551
LT Case No. 2022-CF-001082-A

_____

BRANDON ROBERT HOLIFIELD,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Flagler County.
Terence R. Perkins, Judge.

Matthew J. Metz, Public Defender, and Edward J. Weiss,
Assistant Public Defender, Daytona Beach, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Alyssa M.
Williams, Assistant Attorney General, Daytona Beach, for
Appellee.

February 21, 2025

PRATT, J.

Brandon Robert Holifield ("Appellant") appeals his judgments
and sentences for drug- and weapon-related charges, contending
that law enforcement exceeded the scope of a valid inventory
search when it recovered evidence from his vehicle. On appeal, he
offers several arguments for reversal, but he preserved only one of
them below: that the impoundment and inventory were a ruse for

an investigatory search. Reaching the merits of only this pretext argument, we conclude that bodycam videos of the events leading up to the search are not inconsistent with the officer's sworn testimony, and the circuit court did not reversibly err when it credited that testimony. Therefore, we affirm.

## I.

At around 2:00 p.m. on October 18, 2022, Deputy Christian Harrison, an officer of the Flagler County Sheriff's Office, saw a silver Chevrolet Trailblazer with a temporary tag and no front bumper. He noticed that the driver (Appellant) was not wearing a seatbelt, and he pulled him over in a residential area for a traffic stop. At Harrison's directive, Appellant pulled the vehicle to the side of the road and parked in front of a vacant lot. When Harrison asked for license and registration, Appellant stated that he did not know where either one was, and he speculated that his license may have been suspended due to a failure to pay child support. He did, however, provide his name and date of birth. Harrison asked whether there was "anything in the car I should know about," including "narcotics" or "anything like that." Harrison responded, "no, sir."

A database check revealed that Appellant's license was indefinitely canceled on July 18, 2022, and Appellant had multiple prior license suspensions. Harrison also discovered that the vehicle bore an expired tag assigned to a different vehicle, the tag that was supposed to be on Appellant's vehicle had a "seize tag" order, and the vehicle's registration was expired. After further questioning—and after Harrison's supervisor, Sgt. Adam Biss, arrived on the scene—Harrison placed Appellant under arrest for driving while license suspended or revoked, unlawful use of a temporary tag, and attaching a tag not assigned to the vehicle.

While Appellant sat in the back of Harrison's patrol car, Appellant told Harrison that he wanted his father to remove the truck and he did not want it towed. Harrison then spoke separately with Appellant's father, who had arrived on the scene shortly before the arrest. Appellant's father told Harrison that he did not want the vehicle left on the side of the road and towed, asking if he could quickly get someone to help him remove the vehicle.

2

Harrison asked him whether his son had ever been arrested, and he responded yes. Harrison asked whether his son had ever had a narcotic-related arrest; he said no. Harrison then stated, "we're not gonna stay here all day," but when Appellant's father reiterated that he lived nearby, Harrison told him to "[g]o ahead and get started with that," meaning the process of getting someone to help him remove the vehicle. Appellant's father immediately left.

Harrison approached Biss after Appellant's father left; their interactions were captured on their body-worn cameras. While both circled the vehicle, Biss mentioned to Harrison that "there's a lot of weird stuff in here." Harrison responded that he had not seen "anything that stood out" when Appellant had opened his door. Biss specifically mentioned a blow torch lighter in the front seat, which he called "kind of an indicator of meth" and something "you don't see . . . every day." At that point, Harrison mentioned, "maybe I'll get a 10-81," a reference to a tow. Biss then stated that he saw what appeared to be a safe or lockbox and pill bottles.

Directly after this interaction with his supervisor, and while Appellant remained handcuffed in the back of the patrol car, Harrison changed his mind and decided to have Appellant's vehicle towed. He announced to Biss: "Yeah, we're—I'm just gonna tow it then, I'll just—I'll go through it real quick." A search of the vehicle ensued, uncovering the drugs, paraphernalia, and weapons that formed the basis for the charges relevant to this appeal. Appellant's father returned to the scene during the search—before the tow truck arrived and less than ten minutes after he'd left.

## II.

Appellant moved to suppress the evidence, asserting that the search was not a valid inventory search. The court held a hearing, at which Harrison testified as the sole witness, with the questions and testimony centering on his motivation for the search. Harrison acknowledged that he did not have probable cause for the search, the search occurred while Appellant was handcuffed in the patrol car, and the only legal justification for the search was as an inventory search. He also acknowledged that, at the time he made the decision to tow the vehicle, it was not blocking traffic or a house, and it was not otherwise illegally parked.

3

Harrison testified that, after Appellant's father left the scene, he realized that the vehicle could not lawfully be driven away because of the registration and tag issues, and this realization was what prompted his decision to tow the vehicle. He specifically testified that nothing Biss had said—including the torch comment—prompted his change of mind and his decision to have the vehicle towed, and that he conducted the search for inventory reasons without any intention to obtain drugs or other evidence of criminal activity. He further testified that, under Flagler County Sheriff's Office General Order 488, "if I make an arrest and [the arrestee's vehicle is] on public property, I tow the vehicle." He also stated that he does not allow the vehicles that he stops to be driven away from the scene when they lack a tag or a valid registration, and "[w]e're liable for the vehicle if it leaves . . . ." He acknowledged, however, that the General Order provides for towing of illegally parked vehicles when there are no readily available alternatives to impoundment, and that he had discretion whether to allow Appellant's father to drive the vehicle away. He also acknowledged that he did not fill out an inventory sheet, which, he testified, is used only to document valuable items.

When asked why he initially told Appellant's father that he could look for someone to help him remove the vehicle, Harrison responded: "So at that point in time it kind of slipped my mind that the registration was canceled. And I was having a friendly conversation so it kind of slipped my mind." He continued: "I did . . . tell [Appellant's father] to go back, but after talking with Sgt. Biss, I recalled the seize tag order and all that good stuff, so we decided to get started on the tow."

After hearing the parties' arguments, the court denied the motion to suppress in a written order that is the subject of this appeal.

### III.

A ruling on a motion to suppress may present issues of fact, issues of law, or both. Findings of fact are reviewed to determine whether they are supported by competent, substantial evidence. *See Cruz v. State*, 320 So. 3d 695, 712 (Fla. 2021); *Bender v. State*,

4

359 So. 3d 429, 433 (Fla. 5th DCA 2023). If instead the suppression order turns on a pure issue of law, the de novo standard applies. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Presley v. State*, 227 So. 3d 95, 99 (Fla. 2017); *Connor v. State*, 803 So. 2d 598, 605–07 (Fla. 2001). On review of the application of law to fact, the de novo standard also governs. *See State v. Phipps*, 346 So. 3d 1252, 1254 (Fla. 5th DCA 2022).

On appeal, we must interpret the evidence—and draw inferences from the evidence—in a light most favorable to sustaining the trial court's ruling on the motion. *See Jones v. State*, 648 So. 2d 669, 676 (Fla. 1994); *State v. Newton*, 737 So. 2d 1252, 1252 (Fla. 5th DCA 1999). While "[s]uppression issues are extraordinarily rich in diversity and run the gamut," "the actual ruling is often discrete and factual," and "[a]ppellate courts cannot use their review powers in such cases as a mechanism for reevaluating conflicting testimony and exerting covert control over the factual findings." *State v. Glatzmayer*, 789 So. 2d 297, 301 (Fla. 2001). "As with all trial court rulings, a suppression ruling comes to the reviewing court clad in a presumption of correctness as to all fact-based issues, and the proper standard of review depends on the nature of the ruling in each case." *Id.* (footnotes omitted); *accord Marquardt v. State*, 156 So. 3d 464, 479 (Fla. 2015); *D.B.P. v. State*, 31 So. 3d 883, 884–85 (Fla. 5th DCA 2010); *Bevard v. State*, 976 So. 2d 1163, 1164–65 (Fla. 5th DCA 2008).

**IV.**

Before conducting our review, we must determine which arguments are properly before us. In seeking reversal, Appellant advances three distinct arguments against the lawfulness of the search. First, he argues that the search was not a valid inventory search because it was a pretext for finding evidence of a crime, and Harrison's testimony to the contrary was not credible. Second, he argues that the search was not a valid inventory search because no state law or local ordinance authorized the impoundment of his vehicle. Third, he argues that the search was not a valid inventory search because Harrison failed to follow his department's standards for conducting such searches.

5

Only the first argument was preserved below. We offer the following thorough explanation primarily for the benefit of Appellant and his counsel; other readers should feel free to skip to the next section.

Appellant's written motion to suppress presented only a pretext argument (relevant portion quoted here, minus citations):

> An inventory search must be free of any taint of a desire to search for illegal items. It cannot be used as a pretext to look for incriminating evidence. . . . The Flagler County Sheriff's general order related to vehicle tows and impoundment clearly states that an inventory search is not a search for evidence. In this case Deputy Harrison agreed . . . not to tow the vehicle and to let the Defendant's father a reasonable amount of time to come back and drive the vehicle away. Sgt. Biss stated in deposition that that type of a decision is at the discretion of the deputy. Nothing changed in between the time the Defendant's father left to when the decision was made to tow the vehicle other than seeing items the officers [believed were] associated with drug use. Seeing those items led Deputy Harrison to change his mind and now have the vehicle towed and to start a search of the contents of the vehicle.

During the suppression hearing, Appellant's counsel repeatedly confirmed that his argument turned only on pretext, urging that the circumstantial evidence called into question Harrison's credibility:

> THE COURT: So, really what this boils down to is whether or not that search is pretextual based on what the training officer or supervising officer or supervisor, whatever you want to call him, the other deputy on scene, mentioned immediately prior to the tow request, right?

6

COUNSEL: Your Honor, that's exactly it.

*** 

COUNSEL: The key point in my argument is when the deputy makes the decision to now tow the vehicle after he had . . . [allowed Appellant's father] to come back and get it as long as he comes back in a quick amount of time. Your Honor, he said that he has discretion. He can allow the vehicle to be driven away, even if it's a short amount of time. His search of that vehicle in the evidence that we've seen, I hate to say it, it belies his assertion here under oath that his desire to now do an impound is in no way influenced by hearing his supervisor say seconds before that there's a blow torch. That's an indicator of meth. Your Honor, you decide the credibility of a witness. I don't make these arguments lightly . . . . And then less than one minute later, now he's wanting to impound it and to search it. And the only logical and reasonable explanation is what happened in that one minute. And what happened in that one minute was as they were walking around the vehicle and looking to see what was in it, they're seeing things in which they believe related to drug use. At least according to the supervisor. Blow torch, lock boxes and pill bottles.

*** 

COUNSEL: The issue is, and again the Court understands my argument, is that it's not an issue of whether or not woulda, coulda, shoulda. Could the deputy have done this or not, it's what his motivation was. And his motivation in this case had to be based on that one minute. There is no other interceding factor that explains it. He tried to say that he forgot. I don't

7

think that's credible. I don't think that's credible because he was just told it right before he told his supervisor I'm going to go let the guy go and come back and get it. I don't want to repeat my same arguments. I just wanted to point out that the tow was requested after the walk around. Deputy Harrison never made that decision to go ahead and tow it before, and it was only after the walk around and then the discussion that he had with his supervisor.

While Appellant's counsel did refer to Harrison's failure to complete an inventory sheet, he framed this fact as evidence of pretext and a reason to doubt Harrison's testimony, rather than a standalone argument against the lawfulness of the search:

> COUNSEL: And overall [Deputy Harrison] never once filled out an inventory sheet.

> THE COURT: Why does that matter?

> COUNSEL: It matters to show that he's not inventorying this vehicle in good faith. He's looking for evidence of a crime and the inventory sheet is what he is supposed to be doing. He's supposed to be cataloging what's in it. He never once filled out an inventory sheet. So why do we have an inventory search without an inventory sheet?

> ***

> COUNSEL: The cases are very clear. It's like he's not required to ignore it, but the fact that he never once does an inventory sheet belies his explanation that he is doing this in good faith to document the contents of the interior of this vehicle. And the main thing is, what could have explained it in that one minute, Judge? You're the—you have to judge the demeanor of the witness.

And critically, the pretext argument that Appellant presented was the only one that the court ruled on below. At the end of the hearing, the court announced: "the issue is, is this a true good-faith inventory or is this a pretext or subterfuge for a criminal investigatory search. I'll make that determination." And indeed, that determination—in particular, the credibility of Harrison's testimony measured against the video evidence—drove the court's written ruling. As the court found:

> Having carefully considered the evidence and testimony, this Court finds the testimony of Deputy Harrison to be credible. The Court accepts the Deputy's simple but believable explanation that in the middle of an evolving arrest and while attempting to be nice, the Deputy made a mistake in telling the father he could remove the Defendant's SUV. The uncontested evidence shows that the father could not have legally operated that vehicle, even a short distance. The Deputy realized his mistake before the father returned and started the proper process to tow the SUV and inventory [its] contents. The vehicle inventory was a mandatory part of the towing protocol and was not a pretextual, bad faith search of the SUV in furtherance of a criminal investigation.

In short, before the trial court, Appellant repeatedly framed his argument as one of pretext, calling for the court to discredit Harrison's testimony regarding his good-faith inventory motive for the search. And that's precisely the argument that the court addressed in the order under review. But now, for the first time on appeal, Appellant attacks the search on the grounds that no law or ordinance authorized the impound and Harrison failed to follow department policy in conducting it. "The failure to raise [these] specific argument[s] below deprived the trial court from considering [them] and, hence, [they were] not preserved for our review." *Roberts v. State*, 349 So. 3d 928, 929 (Fla. 5th DCA 2022); *see Hughley v. State*, 325 So. 3d 933, 933–34 (Fla. 5th DCA 2020). In addition, Appellant does not argue fundamental error.

*See Wheeler v. State*, 87 So. 3d 5, 6 (Fla. 5th DCA 2012) (defendant has the burden to demonstrate fundamental error, and he fails to preserve a claim of fundamental error by failing to argue fundamental error in his initial brief). Therefore, we will address only Appellant's pretext argument.

## V.

"An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996). As the Florida Supreme Court has explained, "[a]n inventory search is a Fourth Amendment search and seizure, but [it] is unique in that its purposes are for the protection of property and persons rather than to investigate criminal activity." *Twilegar v. State*, 42 So. 3d 177, 192–93 (Fla. 2010) (citation omitted).[1] "Contraband or evidence seized in a valid inventory search is admissible because the procedure is a recognized exception to the warrant requirement." *Id.* at 193 (citing *Caplan v. State*, 531 So. 2d 88 (Fla. 1988)). "The nature of this exception, however, is determined by the nature of the intrusion." *Id.*

*Twilegar* further explained that "[i]n *South Dakota v. Opperman*, the United States Supreme Court discussed the protective, noncriminal basis of this particular intrusion and pointed out that the probable cause standard and the warrant requirement are not relevant to an inventory search analysis." *Id.* (citation omitted). *"The test is solely one of 'reasonableness.' The reasonableness of a purported inventory search is dependent upon*

---

[1] The U.S. Supreme Court has held that the Fourteenth Amendment incorporates against the State the Fourth Amendment's guarantee against unreasonable searches and seizures, as well as the exclusionary rule that the Court created to enforce it. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Appellant also predicated his written motion to suppress on provisions of the Florida Constitution, but he pursues only his federal constitutional claim on appeal.

*it being a true good-faith inventory search and not a subterfuge for a criminal, investigatory search.*" *Id.* In other words, "[i]f the search is not, in fact, an inventory search, then it must be justified on some other basis." *Id.*

An inventory search of a vehicle involves two distinct Fourth Amendment events: the impoundment (seizure) of the vehicle, and the inventory (search) of the vehicle's contents. The U.S. Supreme Court's precedent in this area often has focused on whether agency policies sufficiently cabined individual officer discretion regarding the decision to impound and the scope of the inventory search. *See, e.g., Florida v. Wells*, 495 U.S. 1, 4–5 (1990); *Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372–76 (1976). However, those cases contain passages suggesting that a showing of bad faith—at least under some circumstances—may remove a search beyond the permissible bounds of an inventory. *See, e.g., Wells*, 495 U.S. at 4 (reiterating "the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence"); *Bertine*, 479 U.S. at 372 ("[T]here was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation."); *Bertine*, 479 U.S. at 376 ("There was no showing that the police chose to impound Bertine's van in order to investigate suspected criminal activity."); *see also Opperman*, 428 U.S. at 370 n.5 ("The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations."). And indeed, in holding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," and in reciting its unwillingness "to entertain Fourth Amendment challenges based on the actual motivations of individual officers," *Whren*, 517 U.S. at 813, the Court has distinguished probable-cause searches from inventory searches, which are conducted in the *absence* of probable cause, *see id.* at 811–12 (distinguishing *Wells* and *Bertine*).

Absent clear direction from either of our reviewing courts, we hesitate to delve too deeply into the subjective motivation of individual officers. However, in light of the above-cited passages in *Wells*, *Bertine*, and *Opperman*—and because inventory searches do

not hinge on probable cause—we will assume, without deciding, that proof of an officer's subjective, bad-faith motivation can sometimes show that "the search is not, in fact, an inventory search." *Twilegar*, 42 So. 3d at 193. In other words, we will assume for argument's sake that Appellant's pretext argument has legal legs.[2] We turn now to the question whether it has factual footing.

---

[2] For what it's worth, some federal courts of appeals may deem a purported inventory search invalid if the officer acts *solely* for an investigatory purpose, but they will uphold the search if he acts for a mix of both administrative and investigatory purposes so long as the search materially complied with standardized procedures. *See United States v. Del Rosario*, 968 F.3d 123, 126 (1st Cir. 2020) ("Of course, if the officer has a proper noninvestigatory reason, she may act on it even if she also has (as will often be the case) a belief that impoundment and inventorying will find evidence of a crime."); *United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) ("Under the Supreme Court's precedents, if a search of an impounded car for inventory purposes is conducted under standardized procedures, that search falls under the inventory exception to the warrant requirement of the Fourth Amendment, notwithstanding a police expectation that the search will reveal criminal evidence."); *United States v. Mundy*, 621 F.3d 283, 294 (3d Cir. 2010) (adopting the rule from *Lopez* where officers impounded and inventoried a vehicle after seeing and smelling evidence of narcotics, holding that "[s]uch initial observations [by the searching officers] alone do not suggest that the subsequent inventory search was conducted in bad faith"); *United States v. Anderson*, 101 F.4th 586, 596 (9th Cir. 2024) ("Turning to the present case, we must determine if the facts demonstrate that the Government met its burden to show that the deputies were at least partially motivated by administrative purposes to search Anderson's truck, or whether they acted solely for investigative purposes."). The Fifth Circuit, by contrast, does not deem an officer's motive relevant to the lawfulness of an inventory search. *See United States v. McKinnon*, 681 F.3d 203, 210 (5th Cir. 2012) (applying the *Whren* rule to an inventory search). This appeal does not require us to pick sides on that split, so we won't.

As evidence of Harrison's alleged motive to use the inventory as a bad-faith ruse to uncover evidence, Appellant points not only to Harrison's failure to fill out the tow sheet,[3] but also to the circumstances preceding the officer's abrupt decision to have the vehicle towed. He directs our attention to the mentions of narcotics, especially Sgt. Biss's comments regarding the blow torch (which he termed "an indicator of meth"), lock boxes, and pill bottles. And he heavily relies on the fact that Harrison's change of mind to impound the vehicle—rather than allow Appellant's father to move it—immediately followed those comments from Sgt. Biss, his supervisor.

Appellant certainly presents evidence of his claim. However, the State presented its own evidence: Harrison's testimony. On the stand and under oath, Harrison unambiguously testified that his actions were not prompted by his supervisor's comments or any effort to uncover evidence but instead were a good-faith impoundment and inventory. And he offered a benign explanation for his abrupt change of mind: his sudden realization that the car could not legally be driven away.

In short, and as Appellant's counsel repeatedly told the trial court, the parties posed a credibility question: did Deputy Harrison testify truthfully, considering the circumstantial evidence that may suggest otherwise? After viewing the video and hearing Harrison's testimony, the court chose to believe him. This factual finding—that the witness testified truthfully—falls within the heartland of the trial court's role. *See Parlee v. State*, 899 So. 2d 458, 460 (Fla. 5th DCA 2005) ("The role of the trial court is to weigh the credibility of witnesses and to resolve evidentiary conflicts, and on truly discretionary matters, the appellate court must recognize

---

[3] Although Appellant did not preserve his argument that Harrison's deviation from agency policy by itself invalidates the search, we note that several federal courts of appeals "have expressly recognized that the failure to complete an inventory form does not invalidate an inventory search." *United States v. Garay*, 938 F.3d 1108, 1112 (9th Cir. 2019) (compiling cases from the First, Fourth, Fifth, and Eleventh Circuits); *see also, e.g.*, *United States v. Mayfield*, 161 F.3d 1143, 1145 (8th Cir. 1998).

the trial court's 'superior vantage point.'" (quoting *Holden v. State*, 877 So. 2d 800, 801–02 (Fla. 5th DCA 2004))). And as "a court of review, not first view," *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015) (Sutton, J.), we will not "reevaluat[e] conflicting testimony and exert[ ] covert control over the [trial court's] factual findings," *Glatzmayer*, 789 So. 2d at 301.

Appellant nonetheless argues that we may disturb the trial court's credibility determination because the relevant events, interactions, and utterances were captured on law enforcement body cameras. To be sure, we have reviewed those videos. And indeed, where we ourselves have watched a video of a search, "we give less deference to the factual findings made by the trial court that are based on its observation of th[e] same video." *State v. Thornton*, 286 So. 3d 924, 928 (Fla. 5th DCA 2019). However, nowhere did the trial court make a factual finding that appears to us to depart from the video evidence. The court did not, for example, determine that Biss said "touch" instead of "torch" or "breath" instead of "meth." To the contrary, its written order accurately recited Biss's "torch" and "meth" comments, as well as Harrison's abrupt announcement—during the walkaround with Biss—that he'd decided to have the vehicle towed. These accurate recitations followed a full hearing during which the court not only viewed the videos, but also heard from counsel on the contents of the dialogue that the videos captured. In its written order, the court then summarized Harrison's in-court testimony and wrote that, "[h]aving carefully considered the [video] evidence and [live] testimony, this Court finds the testimony of Deputy Harrison to be credible." In particular, the court found Harrison's explanation for his sudden change of mind "simple but believable."

The videos, in other words, provide some circumstantial evidence to doubt Harrison's testimony, but the video evidence and live testimony are not irreconcilable. *Cf. Wiggins v. Dep't of High. Saf. & Motor Veh.*, 209 So. 3d 1165, 1166 (Fla. 2017) ("[E]vidence which is totally contradicted and totally negated and refuted by video evidence of record, is not competent, substantial evidence."). Because the trial court made no factual findings that contradict the video evidence, and because the video evidence and testimony are not inherently contradictory, we will apply the deferential standard of review normally accorded to a trial court's factual

14

findings and credibility determinations. Appellant has not carried his heavy burden to show that the trial court reversibly erred in crediting Harrison's testimony, which, in turn, provided competent, substantial evidence of his good-faith motivation for the impoundment and inventory search.

AFFIRMED.

MAKAR and KILBANE, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____